James R. **CORCORAN** et al., Appellants,

v.

**ALLIED SUPERMARKETS, INC.,**
Appellee.

No. 73-1414.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 14, 1974.

Decided June 7, 1974.

Rehearing and Rehearing En Banc
Denied July 5, 1974.

---

Charles Alan Seigel, St. Louis, Mo., for appellants.

Stephen W. Skrainka, St. Louis, Mo., for appellee.

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. The plaintiffs argue that the agreement was between the local union and Allied's nationwide operations. Allied, on the other hand, argues that the agreement was between its St. Louis operation and the local

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and SMITH, Senior District Judge.*

HEANEY, Circuit Judge.

The issues on this appeal are: Did the District Court err in concluding (1) that a settlement agreement between the plaintiffs' union and their employer terminated plaintiffs' rights to a guaranteed annual wage for the duration of a collective bargaining agreement, and (2) that neither the union nor the employer was guilty of fraud or misconduct against the plaintiffs in reaching the settlement agreement.

On January 1, 1969, Teamsters' Local Union 688 entered into a multi-employer collective bargaining agreement covering warehouse and office employees of a number of employers in the St. Louis, Missouri, area. One such employer was the St. Louis operation (Bettendorf-Rapp Division) of Allied Supermarkets, Inc., a national retail grocery chain.[1] The agreement was to run until May 31, 1973, but in accordance with its terms, it was reopened in June of 1970 and modified in certain respects not pertinent to the issues raised here. The "Guaranteed Annual Wage Article" of the agreement provided that each employer would guarantee employment of at least 2,000 straight-time hours annually for the duration of the agreement to the fifty percent of its employees with the greatest seniority. The Article further provided a "liquidation-cancellation" clause which read as follows:

\* \* \* If during the life of this Agreement the stockholders should decide to liquidate the Company or to consolidate with some other Company, then this guarantee may be cancelled

union. For internal corporate purposes, the St. Louis operation—Bettendorf-Rapp—was treated as a "Division" of Allied. It was one of nine such retail divisions of Allied, each operating independently under the direction and general management of an Allied vice president. The agreement at issue only covered employees in the Bettendorf-Rapp Division.

on thirty (30) days written notice to the Union.

In July of 1970, Allied decided to terminate its St. Louis operation because Allied as a whole was in financial trouble and the Division was operating at a loss. Allied officials, beginning on July 24, 1970, held a number of meetings with officers of the local union at which it revealed its termination plans and discussed its obligations under the agreement including the Guaranteed Annual Wage (GAW) provision. These meetings were held without the knowledge of the rank and file members of the local union. The local union's officers agreed not to disclose Allied's plans to others because Allied feared disclosure would frustrate the sale of the Division, result in a loss of employees and grocery customers and cause adverse fluctuations in Allied's corporate stock. Allied took the position that by terminating its St. Louis operations, it was relieved of its obligations under the GAW provision. It reasoned that the agreement was between the local union and the Bettendorf-Rapp Division, not Allied as a whole. The local union officers contended that Allied would remain obligated. They reasoned that the agreement was between the local union and Allied as a whole, and that Allied was obligated under the GAW clause until or unless Allied's nationwide operations were liquidated and not just the Bettendorf-Rapp Division. No immediate agreement was reached by the parties.

On October 5, 1970, the local union and employees were notified in writing that the Division would be liquidated and the employees laid off effective October 10, 1970.

On October 7, 1970, legal counsel for the Teamsters' International advised the local union's officers that applicability of the GAW clause under the circumstances was questionable, that a test would involve lengthy litigation, and that the precarious financial position of

Allied might make the collection of a judgment, if any, difficult. Later that same day, the local union officers and Allied officials reached an agreement under which Allied agreed to pay six weeks' severance pay, plus accrued vacation pay, to all office and warehouse employees of the St. Louis operation. The settlement agreement contained the following clause:

The severance payment is in full satisfaction of, and will release Allied Supermarkets from any further liability to any employee under the current agreement.

The agreement was ratified by the employees on October 8, 1970, by a vote of eighty-nine in favor and twenty-two opposed. Those opposed for the most part were employees with enough seniority to place them within the coverage of the GAW. On October 14, 1970, checks for the severance pay and accrued vacation pay were issued to the employees.

The plaintiffs, thirty-four of those employees eligible for the GAW, brought an action in the United States District Court for the Eastern District of Missouri. After trial without a jury, the District Court held that plaintiffs' contractual rights—2,000 hours of straight-time annual employment for the duration of the agreement—were effectively compromised and completely released by the settlement agreement, thereby barring them from recovery. It further held that neither Allied nor the local union was guilty of fraud or misconduct and that they had not entered into a conspiracy to deprive plaintiffs of their rights under the collective bargaining agreement.[2]

The plaintiffs contend on appeal that the District Court erred in holding the settlement agreement terminated their rights under the GAW clause of the agreement because the local union acted beyond its authority in compromising their rights. In addition, they contend that the District Court erred in conclud-

2. The District Court's memorandum opinion incorporating its "Findings of Fact and Con-

clusions of Law" is published at 359 F.Supp. 1041 (E.D.Mo.1973).

ing that neither the local union nor Allied was guilty of fraud or misconduct and that they had not entered into a conspiracy to deprive the plaintiffs of their contractual rights under the collective bargaining agreement. We disagree.

■ The District Court correctly held that the local union, as the employees' exclusive bargaining agent, had a right to settle the anticipated contractual dispute over the applicability of the GAW clause after the Bettendorf-Rapp Division was liquidated. Section 33.01 of the Constitution and By-Laws of Teamsters' Local Union 688 grants this authority to the local union,[3] and such a grant of authority is permissible under the law. See, Elgin, Joliet & Eastern R. Co. v. Burley, 327 U.S. 661, 663 n.2, 66 S.Ct. 721, 90 L.Ed. 928 (1946); Pyzynski v. New York Central Railroad Company, 421 F.2d 854 (2nd Cir. 1970). This authority is not absolute. The local union's "obligation 'to represent all members of an appropriate unit requires (it) to make an honest effort to serve the interests of all of those members, without hostility to any. . . .' and its powers are 'subject always to complete good faith and honesty of purpose in the exercise of its discretion.' Ford Motor Co. v. Huffman, 345 U.S. 330, 337–338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 [1953]." Humphrey v. Moore, 375 U.S. 335, 342, 84 S.Ct. 363, 368, 11 L.Ed.2d 370 (1964).

■ Thus, we turn to an examination of the circumstances which existed at the time the settlement agreement was entered into. The record supports the view that there was a genuine dispute as to whether or not Allied had a continu- ing obligation to pay the GAW benefits. The experienced Teamsters' International legal counsel had advised the local union's officers that the clause was probably not enforceable. The seniority lists, which determined eligibility for the benefits, were limited to employees of the St. Louis operation and were not nationwide. The history of the GAW clause's application under similar contracts was that employees were not given benefits when a division and not an entire company was liquidated. Furthermore, while the 1969 agreement was signed by Allied, the reopened June 1, 1970, agreement, which was in effect, and all other previous contracts had been signed by "Bettendorf" or "Bettendorf-Rapp." We believe it is clear from these facts that there was a genuine dispute as to the applicability of the GAW clause and that the local union officers acted in good faith and honestly represented the plaintiffs in negotiating the settlement agreement. Therefore, we cannot say that the District Court erred in concluding that it was permissible for the local union to negotiate severance payments for all employees including the plaintiffs in exchange for the release by the employees of all obligations Allied might have under the contract.

Moreover, as we read the collective bargaining agreement, the GAW clause was primarily designed to provide full-time employment for those with the most seniority rather than part-time work for all in the event of a business slowdown. It was not intended to extend benefits to the senior employees when an entire division was liquidated as was the case here.

■■ We find no merit in plaintiffs' additional arguments in support of their

3. Section 33.01 The Union shall be the exclusive representative of each member for the purpose of collective bargaining and for the negotiation and execution of collective bargaining agreements with employers, and it is irrevocably authorized and empowered by each member to present, negotiate and settle any and all grievances, complaints and disputes arising out of the relationship between the member and his employer in such manner as it deems, within its discretion, to be in the best interests of the Union. The Union and its officers may decline to process any such grievance, complaint or dispute if, in their sole discretion and judgment, such grievances, complaint or dispute lacks merit.

contention that the release did not terminate their rights under the GAW clause. We are satisfied that the notice of cancellation was adequate, that the ratification of the settlement agreement by the rank and file was knowledgeable, that it was proper for all the local union members covered by the collective bargaining agreement to vote on the settlement agreement, and that liquidation by decision of Allied's officers and directors, rather than by vote of its "stockholders," sufficiently complied with the purpose of the "liquidation-cancellation" clause to effect the cancellation of the GAW clause.

■ Similarly, we find no merit in the plaintiffs' contentions that the local union and Allied were guilty of fraud and misconduct in negotiating the settlement agreement, and that they had conspired to deprive the plaintiffs of their rights under the collective bargaining agreement. It is true that the local union officers were informed by Allied, in July of 1970, that Allied was considering terminating its St. Louis operation and that the rank and file were not given notice until October of 1970. This fact alone, however, does not demonstrate fraud, misconduct, or conspiracy to deprive the plaintiffs of their rights. Rather, it is clear from the record that at all times, the local union acted in the best interest of its members, including the plaintiffs. The local union fought hard to gain GAW benefits for the plaintiffs, but when in their honest judgment it became clear that this was not feasible, the negotiators went on to get at least severance pay for all members including the plaintiffs. Furthermore, there is no credible evidence to support the assertion that the local union and Allied conspired against the plaintiffs.

Finally, we do not suggest that it is ever proper for a majority of a union to deprive the minority of contractual benefits to which they are entitled. Rather, we emphasize that the rights of the mi-

nority here to the GAW was tenuous at best, and the local union acted responsibly in negotiating the settlement agreement.

Affirmed.