**In re CONTINENTAL AIRLINES CORPORATION, Continental Air Lines, Inc., Texas International Airlines, Inc., TXIA Holdings Corporation.**

Bankruptcy Nos. 83–04019–H2–5, 83–04020–H1–5, 83–04021–H3–5 and 83–04022–H3–5.

United States Bankruptcy Court, S.D. Texas.

June 26, 1986.

John J. Gallagher, Charles L. Warren, Jon A. Geier, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., Harvey R. Miller, Bruce R. Zirinsky, Weil, Gotshal & Manges, New York City, Myron M. Sheinfeld, Lenard M. Parkins, Sheinfeld, Maley & Kay, Houston, Tex., for debtor, Continental Airlines Corp., et al.

Jay D. Roth, Larry C. Drapkin, Taylor, Roth & Bush, Los Angeles, Cal., Jeffrey Manners, Abramowitz & Loftus, Houston, Tex., for Union of Flight Attendants.

John O.B. Clarke, Jr., Washington, D.C., for International Ass'n of Machinists and Aerospace Workers.

Claude D. Montgomery, Booth, Marcus & Pierce, New York City, for Official Union Labor and Pension Creditors' Committee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO THE UNIONS' AUTHORITY TO FILE CLAIMS ON BEHALF OF INDIVIDUAL EMPLOYEES

T. GLOVER ROBERTS, Bankruptcy Judge.

The following are facts either stipulated or established by the evidentiary record in this case in previous matters, of which the Court takes notice, and is considered a proper and adequate basis on which to make these "Findings" and "Conclusions":.

### FINDINGS OF FACT

1. On January 30, 1985, this Court established a bar date of April 30, 1985, by which time all proofs of claims against Debtors' estate had to be filed. With the assistance of the Official Committees, Debtors sent notice of the bar date, along with instructions for the filing of proofs of claims, to all prepetition employees. In addition to the notice and instructions sent by Debtors, the Air Line Pilots Association ("ALPA"), the Union of Flight Attendants ("UFA"), and the International Association of Machinists ("IAM") (hereinafter collectively the "Unions") also sent notice of the bar date and sample claim forms with instructions to their respective constituents. Approximately 11,000 individual employees of Debtors subsequently filed timely proofs of claims against Debtors' estate.

2. On or about April 30, 1985 each of the Unions filed several proofs of claims against Debtors' estate. The claims were filed in the name of the Union(s), but recited that they were purportedly "on behalf of" individual employees represented by each such Union for collective bargaining purposes. These Union claims did not further identify the individual employees upon whose behalf they were filed, nor did they make any attempt to specify the amount due to, or claimed on behalf of, any named individual. The Unions' claims assert a right to payment of various amounts allegedly owed to individual employees, including, *inter alia*, alleged pre-petition liabilities (wages, accrued sick leave, accrued vacation pay, grievances, etc.), and damages for contract rejection, wrongful separation from service and labor protective benefits. The Unions' claims total in excess of 3.5 billion dollars.

3. In addition to the Unions' bankruptcy claims filed on behalf of employees, approximately 5,467 individual pilots, flight attendants and mechanics have filed their own proofs of claim, asserting rights to payment that are, in part, duplicative and/or inconsistent with the Union claims either in type of claim or amount, or both. The proofs of claims filed for by individual employees, allegedly represented by the Unions, total approximately $230 million.

4. On June 10, 1985 Debtors filed Objections to the Union claims on the grounds, *inter alia,* that the Unions did not have the standing or the authority to file bankruptcy claims on behalf of individual employees. Subsequently, Debtors filed a Motion for Summary Judgment Disallowing All Union Claims On Behalf Of Individuals And To Estimate the Value of Such Claims at Zero contending (1) that the Unions lacked associational standing, (2) that the Railway Labor Act failed to provide statutory authority to the Unions to file bankruptcy claims on behalf of individual employees, (3) that the Unions have not been granted any express or implied authority by individual employees to file bankruptcy claims on their behalf and (4) that the Bankruptcy Code and its underlying policies prohibit the filing of representational claims like those filed here by the Unions.

5. The Unions thereafter filed Oppositions to Debtors' Motion for Summary Judgment contending (1) that the Railway Labor Act does provide them with the authority to file bankruptcy claims on behalf of individual employees and (2) that certain alleged past practices provide them with the implied authority to file bankruptcy claims on behalf of individual employees.

6. The Unions have not claimed nor shown any express authorization from individual employees or from any other source to file bankruptcy claims on their behalf. The Unions acknowledge that they have not complied with the mandates of Bankruptcy Rule 2019(a), which requires that anyone purporting to represent more than one creditor in a Chapter 11 reorganization must file a verified statement with the clerk identifying the names and addresses of those creditors, the nature and amount of their claims, when the claims were acquired, and the pertinent facts and circumstances relating to the employment of the representative who files the proof of claim. *See In the Matter of Baldwin-United Corporation,* 52 B.R. 146, 148 (Bankr.S.D.Ohio 1985).

7. The Unions have never specified any methodology by which they will allocate any recovery on their claims to an individual employee claimant allegedly represented by the Unions. The Unions acknowledge that it is the individual employee claimants, and not the Unions themselves, who would be entitled to vote any allowed claims for or against the confirmation of Debtors' Reorganization Plan.

8. Each Union has acknowledged that its claims may be duplicative of the claims filed by individual employees and that certain of its claims may be subject to mitigation or set-offs, issues which must be resolved on an individual basis.

### Conclusions of Law

1. The rights and relationships between an air carrier, its employees and the employee's chosen representative are governed by the Railway Labor Act ("RLA"). The RLA contains no provisions relating to bankruptcy claims or proceedings. The Supreme Court specifically held in *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), that recovery of any claims arising out of the breach of a collective bargaining agreement may not be had under the collective bargaining agreement, but only through administration of the claim in bankruptcy. *Id.* at 1198–99. Thus, bankruptcy claim proceedings are independent of the collective bargaining process.

2. The RLA specifically differentiates the scope of a union's authority to represent employees, even in a pure labor dispute, based upon a categorization of the dispute as either "major" or "minor". *See Elgin, Joliet & Eastern Railway Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), *opinion adhered to,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946) (*"Burley I"* and *"Burley II"*). A major dispute involves the acquisition of future rights or the prospective enforcement of those rights, while a minor dispute is backward looking, contemplating a claim to vested or already accrued rights. 325 U.S. at 723, 65 S.Ct. at 1289. In a major dispute, the RLA provides a union with "exclusive authority" to conduct negotiations

and reach agreement or settlement. *Id.* at 728, 65 S.Ct. at 1292. In a minor dispute, the RLA provides a union with a role only upon a showing of authorization by the affected employees independent of the RLA. *Id.* at 741, 65 S.Ct. at 1298.

■ 3. Most of the Unions' claims in these proceedings arise under the pre-petition collective bargaining agreements. Therefore, under the above categorization, they are claims for monies due to individual employees which, absent bankruptcy, would be "minor" disputes. The claims arise out of an application of the pre-petition collective agreements and/or rights alleged to be in some way incident to those arguments. Therefore, this Court finds that the Unions' claims are more like a minor dispute than a major dispute, and the rules governing the scope of a union's authority in a minor dispute must be applied.

■ 4. The Unions argue that the decision in *In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir.1984) supports their claim of authority under the RLA to file bankruptcy claims on behalf of individual employees. This Court is not persuaded by the Unions' argument. First, the holding in *Altair* related solely to a union's role on a creditors' committee; no such issue is presented in this proceeding. Second, the *Altair* decision, which preceded *Bildisco*, appears to rest on the premise that enforcement of a labor contract is identical to the assertion of a bankruptcy claim arising out of the rejection of that contract. Yet, *Bildisco* clearly draws a material distinction, as does this Court, between contract enforcement and the bankruptcy claims process. "[T]he filing of the petition in bankruptcy means that the collective-bargaining agreement is no longer immediately enforceable, and may never be enforceable again." 465 U.S. 532, 104 S.Ct. at 1199. Third, it appears that a case cited below incorrectly assumed that Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), applied to the employees of an air carrier, who are subject to the RLA. The Court here is persuaded, after review, by the Debtors'

contentions that Section 301(a) has no applicability to parties governed by the RLA. 29 U.S.C. § 152(3). *See Fechtelkotter v. Air Line Pilots Association*, 693 F.2d 899 (9th Cir.1982). The Unions also argue that Section 204 of the RLA, 45 U.S.C. § 184, is the equivalent of Section 301(a) of the LMRA. Yet, after review, the Court here concludes that Section 204 simply mandates that each airline and union governed by the RLA set up a system adjustment board to arbitrate minor disputes. Comparing the statutory sections argued here, section 204 does not appear to create a right to have a federal court interpret or enforce a collective bargaining agreement, which appears to be the essence of section 301(a). Therefore, the Court concludes that the unions here cannot look to section 204 to provide them with the authority to file claims in bankruptcy on behalf of individuals. The Railway Labor Act defines a limited role for unions in minor disputes and contains no provision comparable to section 301 of LMRA.

5. The Supreme Court in *Burley I* held that in a minor dispute, authorization by employees *"over and above any authority given by the statute was essential,"* and that authority could not be presumed merely because the collective bargaining agent appears and purports to act on the employees' behalf. 325 U.S. at 738–41, 65 S.Ct. at 1296–98. (emphasis supplied). The need for showing such authorization emanates from the potential conflict of interest between a union and its members over the settlement of any claim. 325 U.S. at 738, 65 S.Ct. at 1297. *See also Stevens v. Teamsters Local 2707, Airline, Aerospace and Allied Employees*, 504 F.Supp. 332, 335 (W.D.Wash.1980) (authorization of the union must be clear and specific to avoid any conflict of interest.)

6. Such a conflict is clearly present in this case, as reflected by the overall record. For example, the conflict of interest issue and other potential problems which might arise from allowing a union to file and pursue claims on behalf of individual employees are more than amply illustrated by

the litigation surrounding the settlement of all claims and related litigation between Continental and the Air Line Pilots Association. That settlement was embodied in an Amended Order and Award entered November 19, 1985, approved with conditions by Order of this Court entered December 27, 1985.[1] Briefly stated, when ALPA purported to settle and withdraw all claims and litigation it had filed "on behalf of" individual pilots, several hundred individual pilots entered objections on grounds that they were dissatisfied with the terms of the settlement. The issues relating to the scope of ALPA's authority to settle are now being further litigated at length before this Court. As an equitable matter, the Court has permitted individual pilots to apply to intervene to pursue claims which they had previously relied upon ALPA to pursue. The substantial burden of these issues would have been avoided if individuals had filed the claims in the first place, with a clearly defined grant of authority to their counsel or union representative to pursue the claims.

7. In *Burley II*, the Supreme Court generally set forth the means through which individual employees might confer authority on a union to act on their behalf in resolution of grievances under a labor contract. 327 U.S. at 663 n. 2, 66 S.Ct. at 722 n. 2. In addition to authority expressly conferred by a union's constitution, by-laws or the collective bargaining agreement, the Court also noted that in some circumstances, authority could be implied from custom, usage or by estoppel, where an employee stood by with knowledge and notice of a union's action regarding his grievance. *Id.* at 667, 66 S.Ct. at 723. The Unions here have proffered no evidence that any express authorization was granted them by the individual employees, and the proofs of claim certainly contained no such authority. Instead, the unions rely upon an assertion of implied authority, based upon certain alleged past practices relating to the resolution of grievances under the pre-petition collective bargaining agreements.

8. For a number of reasons, the evidence of implied authority relied upon by the Unions fails to meet their burden of proof under *Burley*. First, as set forth in *Bildisco*, claims proceedings are independent of any suit brought against a debtor-in-possession under a collective bargaining agreement. 465 U.S. at 528–32, 104 S.Ct. at 1198–99. The Court here strongly emphasizes that *the nature of reorganization proceeding under the Bankruptcy Code is significantly different from the determination of rights and remedies under a labor contract.* Therefore, past practices relating to grievances brought under the collective bargaining agreements cannot suffice to confer authority to the Unions to file and pursue bankruptcy claims in behalf of individual employees. Second, inconsistent acts by the individual employees and by the Unions negate any authority that may have been granted. The docket and record of this case reflects that the vast majority of Continental employees represented by a union filed their own bankruptcy claims, thus actively preserving their individual right to control the assertion, adjudication or settlement of their claims. The Unions in urging and instructing their constituents to file individual proofs of claims also acted inconsistently with any argument that the Unions had the authority to file bankruptcy claims on the employee's behalf. As a matter of law, an inconsistent act terminates the authority of an agent. *See Whiting v. Marine Midland Bank-Western,* 80 Misc.2d 871, 365 N.Y.S.2d 628 (Sup.Ct.N.Y.1975); *Restatement (Second) of Agency,* § 119 comment b.

9. The record of individual employee claims filed in this proceeding amply demonstrates that recognition of union authority to file claims in its own name, but on behalf of individuals is not only legally unsound, but is also unnecessary. After consultation with all participating counsel, including union and Committee counsel,

1. In light of the settlement, the accompanying Order resolving the present issues does not re-

late to claims filed by the Air Line Pilots Association.

this Court approved a form of Notice of Bar Date for employee creditors, which was served on all employees with an accompanying proof of claim form. Each Union thereafter gave additional detailed instructions and specially drafted claim forms to their respective constituencies, and the Non-Union Labor Committee did likewise as to non-union employees. As of the bar date, over 15,000 claims had been filed by approximately 11,000 individual employees. In sum, the process of requiring individual proofs of claim can and does work, and avoids the substantial difficulties of ascertaining standing and scope of authority as discussed by the Supreme Court in the *Burley* decisions, *supra,* and in *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ 10. Having failed to show authorization to file bankruptcy claims conferred by statute or by any express or implied grant of individual employees, the Unions cannot establish the associational standing to assert the claims at issue. Under the test delineated by the Supreme Court in *Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) and in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Unions' claims must be dismissed. As emphasized in *Warth,* associational standing is not available when the alleged injuries require "individualized proof." 422 U.S. at 515–16, 95 S.Ct. at 2214. The Unions' claims *make no pretense of indentifying the individual employees* allegedly entitled to share in any recovery on the claims or the methodology for determining individual entitlements. Yet, the value of each employee's derivative claim depends upon many factors which differ enormously between individual claimants, such as whether the employee went on strike or the amount of interim mitigating earnings. Furthermore, and importantly, it is necessarily the individual claimant creditors, not the Unions, who would vote any allowed claims on the Debtors' plan of reorganization. The nature of the claims at issue thus require the partic-

ipation of individual employees in these proceedings. Therefore, the Unions fail to meet the requirements of associational standing. For this additional reason, their claims must be dismissed.

■ 11. Having failed to find that the Unions have the standing or authority to file bankruptcy claims on behalf of individual employees under non-bankruptcy law, the Court also finds that the Unions' claims are likewise prohibited as a matter of bankruptcy law and policy. The Bankruptcy Code explicitly enumerates and permits certain types of representative claims, *i.e.,* claims filed by an indenture trustee, codebtor, surety or guarantor. *See* 11 U.S.C. § 501(a), (b); Bankruptcy Rules 3004, 3005. The Court finds that the Unions' claims here do not fall within any of the allowable categories. Moreover, the Unions' claims also clearly fail to satisfy the requirements of Bankruptcy Rule 2019(a). That rule requires that anyone "purporting to represent more than one creditor in a Chapter 11 reorganization file a verified statement with the clerk stating the names and addresses of the creditors, the nature and amount of their claims, when the claims were acquired, and the pertinent facts and circumstances in connection with the employment of the representative." *In the Matter of Baldwin-United Corporation,* 52 B.R. 146, 148 (Bankr.S.D.Ohio 1985).

■ 12. Finally, as a matter of bankruptcy policy, the Unions claims must be dismissed due to the gross inequities they would create. The Unions have candidly acknowledged that (1) their claims are filed *en masse,* with no attempt to identify the individuals allegedly entitled to recover on each claim or the value of each individual's entitlement; (2) the various claims by each Union may duplicate or overlap each other; (3) the Union claims may duplicate or overlap the claims filed by the individuals; and (4) the Union claims are subject to unspecified set-offs, such as interim earnings and mitigation. As stated in the slightly different context of bankruptcy claims asserted as a class action, "claims against a bank-

rupt estate may not be treated *en masse* but instead each must be treated on its own merits." *In re Woodmoor Corp.*, 4 B.R. 186 (Bankr.Colo.1980). Likewise here, the Unions' claims are antithetical to an overriding bankruptcy policy requiring an individualized analysis of all claims.

13. For all of the foregoing reasons, this Court is persuaded that Debtors are entitled to judgment as a matter of law, and summary judgment is appropriate and will be granted with respect to all Union claims filed on behalf of individual employees. *See* Fed.R.Civ.P. 56(e). The Court would add that policy and equitable considerations weigh heavily in favor of the Debtors' position here, as well. This Court further rules that the value of all Union claims filed on behalf of individual employees is estimated pursuant to 11 U.S.C. § 502(c) to be zero, based upon the Court's conclusions that the Unions lack the standing and/or the authority to file such claims, as they were filed here.

14. However, as a Court of equity, the Court finds that it would be unfair to prejudice individual claimants who may have reasonably relied upon their union to file certain claims on their behalf and who, in the first instance, had the right to bring such claims in their own name. Therefore, in the exercise of its equitable discretion, this Court will allow individual employee claimants to apply to this Court for leave to file new proofs of claim relating to their pro rata share of those union claims, whether still pending or on appeal, which they relied on their union to file in accord with certain procedures designed to ensure that this procedure is (i) not unfair to the Debtors in light of their efforts to date in contesting the union claims on the merits, (ii) is not an avenue for the assertion of new claims which were not the subject of reliance on the unions and (iii) is administratively workable.

15. In order to pursue one or more claims filed by his union, whether still pending or on appeal: An individual must

a. file an application for leave to file a new proof of claim and to pursue union claims on or before August 8, 1986;

b. Such application must designate with particularity, by caption and/or subject matter, each union claim which the applicant intends to pursue;

c. Such application must indicate the applicant's union, employment status on September 23, 1983 (i.e., furloughed, on strike, disabled, active, authorized leave, etc.), and the date or dates of filing, and total dollar amounts, of any prior individually filed bankruptcy claim;

d. Such application must be signed under oath by the applicant, who must affirm (i) personal reliance upon a union to file on their behalf each of the claims specified in their application, (ii) that the applicant has not previously filed an individual proof of claim for a claim(s) of the type included in the application and (iii) that the applicant understands that he is bound by any Order which has previously been entered on a union claim, unless and until such Order is overturned on appeal by a Court of appropriate jurisdiction; and

e. Such application shall have attached to it a proof of claim, in the form required by the Bankruptcy code and Rules, which sets forth the nature or subject matter and dollar value of applicant's derivative share of each union claim included in the application.

f. Debtors shall have until September 8, 1986 to reply to or oppose any such application for leave to file a claim.

g. Any such application for leave to file a claim which is subsequently granted by this Court shall be subject to the condition that the claimant/applicant is bound by prior rulings entered when the applicant's interests were represented by the union; the claimant/applicant may thereupon apply for intervention or substitution in any pending appeal of a subject claim as a party in interest.

These Findings of Fact and Conclusions of Law are hereby incorporated in and made a part of the Order attached hereto.