865 F.2d 1106
 110 Lab.Cas. P 10,918, Bankr. L. Rep. P 72,636
 WIEN AIR ALASKA, INC., dba Wien Airlines, Plaintiff-Appellee,
v.
Andrew BACHNER; Ronald Burkevich; Ted England; Keith
Forsgren; Gary R. Gale; B. David Gates, III; Jeffrey D.
Haddock; Carl Maerzluft; Donald L. Peterson; Dennis
Slaughter; A. Grant Stoddard; Robert Wien; Keith Wilhelm,
Defendants-Appellants.
 No. 86-4356.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 4, 1988.
Decided Jan. 13, 1989.
 
 John H. Bradbury, Bradbury, Bliss & Riordan, Anchorage, Alaska, for defendants-appellants.
 David H. Bundy, Guess & Rudd, Anchorage, Alaska, and Richard N. Appel, Daniel L. Nash and Brian A. Schaffer, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Alaska.
 Before BROWNING, NORRIS and O'SCANNLAIN, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We review the claims in bankruptcy of individual employees for damages arising from their employer's placing them on furlough allegedly in violation of a collective bargaining agreement. The bankruptcy court held that the employees lacked standing because only their collective bargaining agent could bring such claims, and the district court affirmed. We now affirm the district court.
 
 FACTS
 
 2
 Appellee Wien Air Alaska, Inc. ("Wien") and the bargaining representative for Wien pilots ("pilots"), the Air Line Pilots Association ("ALPA"), were parties to a comprehensive collective bargaining agreement ("Agreement"). The Agreement contained a provision that permitted Wien to furlough pilots upon 30 days written notice and set forth a variable compensation schedule for the pilots so furloughed based on seniority.
 
 
 3
 In November 1984, Wien announced its intention to furlough all its pilots as part of a plan to suspend temporarily its scheduled passenger flight service and to restructure its operation from a passenger airline to an aircraft charter, leasing, and maintenance business. ALPA responded by seeking an injunction in federal district court to prohibit Wien from executing the furlough plan unilaterally.
 
 
 4
 The district court granted the injunction, holding that in negotiating the furlough provision of the Agreement, Wien had not contemplated or made known the possibility that it might rely on the furlough provision to suspend flight operations. Air Line Pilots v. Wien Air Alaska, 120 L.R.R.M. (BNA) 3388, 3391 (D.Alaska 1984). It thus characterized the disagreement concerning the furloughs as a "major dispute" over which Wien had an obligation to bargain under the Railway Labor Act ("RLA").[1] Id. To preserve the status quo during the bargaining, the court enjoined Wien from furloughing pilots except in response to situations contemplated at the time of bargaining, such as those relating to reduced demand for scheduled services. Air Line Pilots Ass'n v. Wien Air Alaska, No. A84-516 (D.Alaska Nov. 23, 1984) (order granting preliminary injunction). In addition, the court provided that the injunction would expire upon Wien's filing a petition in bankruptcy. Id.
 
 
 5
 A few days later, Wien did just that, filing a voluntary petition in bankruptcy for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. Secs. 1101-1174 (1986). Wien's disclosure statement showed that it was solvent, but running high operating losses.
 
 
 6
 ALPA then filed a proof of claim on behalf of the pilots in the bankruptcy proceeding. The portion of the proof of claim at issue asserted damages against Wien for an alleged breach of the Agreement based on its refusal to employ the pilots beyond the bankruptcy filing date. These so-called "shutdown damages" included wages, benefits, and accrued, unpaid sick leave to which the pilots were allegedly entitled for the period between the filing and the expiration date of the Agreement some two years later.
 
 
 7
 When Wien filed its reorganization plan, it excluded claims for shutdown damages; its disclosure statement recited that it expected such claims to be disallowed. The disclosure statement also stated that Wien had not rejected the Agreement, but had continued to comply with it.
 
 
 8
 Wien later filed an amendment to its original plan for reorganization that disclosed a tentative settlement agreement with ALPA. Under the settlement, ALPA agreed to drop both its claim for the pilots' shutdown damages and the suit in which it had obtained the injunction; Wien agreed to pay the pilots' claims for pre-petition damages. ALPA then sent its members a letter which stated that, while it had properly brought the claim for shutdown damages as the bargaining representative, it "ha[d] not undertaken to and w[ould] not settle any individual's claim without his express authorization," and asked members for such authorization. One third of the pilots authorized ALPA to settle their claims for shutdown damages; the balance, part of whom comprise appellants here ("individual pilots"), specifically instructed ALPA not to settle their claims or did not respond.
 
 
 9
 At the hearing on confirmation of the reorganization plan, Wien moved to dismiss the individual pilots' claims on the ground that they were encompassed within the parameters of the settlement with ALPA. The individual pilots questioned the good faith of ALPA in agreeing to the settlement and tried to introduce evidence that the chief of ALPA's bargaining unit had a conflict of interest. The bankruptcy judge did not admit the evidence, ruled that the individual pilots lacked standing to bring claims for shutdown damages, and confirmed the reorganization plan.
 
 
 10
 On appeal, the district court affirmed. Bachner v. Wien Air Alaska, Inc., No. A85-265 (D.Alaska Oct. 20, 1986). It concluded that because the conflict concerning Wien's decision to suspend its commercial passenger operations constituted a "major dispute" under the RLA, ALPA was entitled to represent the claims of all Wien pilots, even those who had not expressly authorized it to do so. Id.
 
 
 11
 The individual pilots now appeal.
 
 STANDARD OF REVIEW
 
 12
 Because we are in just as favorable a position as the district court to review the bankruptcy court's findings, we review the district court's decision de novo. Thus, we review the bankruptcy court's findings of fact under the clearly erroneous standard; we review its conclusions of law de novo. In re Woodson Co., 813 F.2d 266, 270 (9th Cir.1987) (citations omitted).
 
 DISCUSSION
 A. The Nature of the Claims Under the RLA
 
 13
 Disputes arising under the RLA are classified as either "major" or "minor." Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945) ("Burley I "), aff'd on reh'g, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946); International Ass'n of Machinists v. Aloha Airlines, 776 F.2d 812, 815 (9th Cir.1985). Major disputes concern the acquisition of statutory rights, such as the right to bargain collectively or to incorporate new rights into future agreements. Minor disputes "concern the interpretation or application of [existing] collective bargaining agreements." Id. If the position of one of the bargaining parties is predicated on the terms of an existing collective bargaining agreement, the matter should be resolved as a minor dispute. O'Donnell v. Wien Air Alaska, 551 F.2d 1141 (9th Cir.1977).
 
 
 14
 Under the RLA, parties to a dispute, whether major or minor, first have a duty to negotiate. 45 U.S.C. Sec. 152 (1986). In the event that negotiations fail to resolve the dispute, the RLA sets forth different procedures on how the parties to the dispute are to proceed, depending upon whether the dispute is characterized as major or minor. Because a major dispute will affect the future of the unit's entire constituency, its resolution lies exclusively within the authority of the employees' collective bargaining representative. Burley I, 325 U.S. at 728, 65 S.Ct. at 1292; see also Hendricks v. Airline Pilots Ass'n Int'l, 696 F.2d 673, 676-77 (9th Cir.1983). Minor disputes, on the other hand, are resolved through binding arbitration by the System Board of Adjustment. Aloha, 776 F.2d at 815; 45 U.S.C. Sec. 153(1)(i) (1986). The collective bargaining agent cannot bind employees to resolution of a minor dispute without express authorization. Burley I, 325 U.S. at 741, 65 S.Ct. at 1298. Thus, whether ALPA possessed authority to settle the individual pilots' claims for shutdown damages turns upon whether this labor dispute is major or minor.
 
 
 15
 We hold that the disagreement over Wien's decision to suspend its commercial passenger operations through the use of comprehensive furloughs is a major dispute. In so doing, we adopt the reasoning the district court employed upon granting the preliminary injunction when it determined that the negotiations leading up to the Agreement showed that neither party considered the effect of a total cessation of scheduled service when drafting the furlough provision.
 
 
 16
 The furlough provision ... does not provide for, nor was it intended to authorize, the suspension of all scheduled operations and the furloughing of the pilots in order to permit the airline to reorganize.... The carrier cannot unilaterally alter the terms of the furlough provision so that the Company may furlough its pilots for purposes other than to meet reduced demand for service.
 
 
 17
 Air Line Pilots v. Wien Air Alaska, 120 L.R.R.M. (BNA) 3388, 3391 (D.Alaska 1984). Because the dispute does not represent either an application or interpretation of the Agreement, the dispute underlying the pilots' claim is a "major" one under the RLA.
 
 B. Effect of Wien's Filing for Bankruptcy
 
 18
 The individual pilots contend that once Wien decided to lay them off permanently via its petition for bankruptcy, the dispute changed from a major one under the RLA involving action not contemplated by the Agreement to a minor one involving only unsecured claims for accrued damages in bankruptcy. After all, they argue, ALPA had no role left as a collective bargaining representative after filing because no future working conditions or bargain could be at issue. As a result, the individual pilots allege that their claims are based on a minor dispute; and because they had not expressly authorized ALPA to settle their claims, they assert that the union lacked the authority to represent all union members in reaching an accord with Wien on the shutdown damages issue.[2]
 
 
 19
 We cannot accept the individual pilots' contentions. As an initial matter, courts have held that a claim for damages arising out of a major dispute is not a minor dispute. See, e.g., Corcoran v. Allied Supermarkets, 498 F.2d 527 (8th Cir.1974) (inferring RLA distinction between major and minor disputes); National Airlines Inc. v. International Ass'n of Machinists, 478 F.2d 1062, 1065 (5th Cir.1973).
 
 
 20
 Furthermore, the bankruptcy claims process provides for the resolution of claims closely analogous to "major disputes" under the RLA. For example, review of a contention that a party's failure to bargain in good faith over a new labor agreement, in violation of 29 U.S.C. Sec. 158(a)(5) (1986), lies within the jurisdiction of the bankruptcy court. See Nathanson v. NLRB, 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952); In re Tucson Yellow Cab Co., 692 F.2d 55, 58 (9th Cir.1983). This is strong indication that Congress did not intend the result the individual pilots urge.
 
 
 21
 Public policy, as well as precedent, dictates that the filing of a petition should not change relative entitlements outside bankruptcy. Otherwise, the strategic incentive to file a petition for reasons other than a collective creditors' action is greatly increased. See Windpower v. Cannon Fin. Serv., 841 F.2d 288, 292 (9th Cir.1988); Jackson, The Logic and Limits of Bankruptcy 68-88 (1986). We therefore conclude that Wien's filing of a petition for reorganization under the bankruptcy laws did not transform this major labor dispute into a minor one.
 
 
 22
 Because we hold that the labor dispute is fundamentally a "major" one, the nature of which did not change upon Wien's filing for bankruptcy, we affirm the district court ruling that ALPA possessed the exclusive right to bargain for its settlement. Burley I, 324 U.S. at 728-29, 65 S.Ct. at 1292-93; Hendricks, 696 F.2d at 677.
 
 C. Waiver of Authority
 
 23
 The individual pilots argue that even if, as a matter of statutory law, ALPA possessed exclusive authority to settle their claims, the union nonetheless waived such authority when, in the course of its correspondence, ALPA agreed not to settle the individual pilots' claims without express authorization.
 
 
 24
 Under the RLA, a bargaining representative has not only the right but the duty to represent its members' claims under a collective bargaining agreement. Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967); Steele v. Louisville & Nashville R.R., 323 U.S. 192, 202-03, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944). While the collective bargaining agent may expressly leave certain areas open to individual bargaining, the practice and philosophy of collective bargaining demand that we read such expressions narrowly. J.I. Case Co. v. NLRB, 321 U.S. 332, 338, 64 S.Ct. 576, 580, 88 L.Ed. 762 (1944). An intent to abdicate collective bargaining responsibility should be attributed to the parties only on the strongest evidence. See Lewis v. Benedict Coal Corp., 361 U.S. 459, 470-71, 80 S.Ct. 489, 495-96, 4 L.Ed.2d 442 (1960).
 
 
 25
 In negotiating the settlement and presenting it to the bankruptcy court, ALPA expressly chose to wield its bargaining power. This action is unequivocal evidence that ALPA did not intend to waive its statutory right to represent its members. In addition, Wien acted reasonably in negotiating a settlement with the pilots' statutory bargaining agent. It was entitled to rely on that agent's apparent authority to bind the pilots to an agreement.[3] Thus, we affirm the district court's holding that the individual pilots lacked standing to bring their claims.
 
 D. Wien's Compliance[4] with Chapter 11
 
 26
 An unexpired collective bargaining agreement is an executory contract susceptible of assumption or rejection by the debtor. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 522-23, 104 S.Ct. 1188, 1194-95, 79 L.Ed.2d 482 (1984); see 11 U.S.C. Sec. 365(a) (1982).
 
 
 27
 To reject a collective bargaining agreement, a debtor must first engage in collective bargaining with the authorized bargaining representative in an attempt to reach a mutually satisfactory modification of the agreement, and then apply for court approval after notice and a hearing. 11 U.S.C. Sec. 1113 (1982).[5] To assume a collective bargaining agreement, a debtor must cure any default and provide adequate assurance of future performance if the court finds such assurance necessary. 11 U.S.C. Sec. 365(b)(1).
 
 
 28
 The individual pilots argue that because Wien either breached or substantially modified the collective bargaining agreement when it shut down its scheduled passenger service through the issuance of the furloughs, it necessarily rejected the agreement.[6] Because Wien did not comply with the requirements of section 1113 for rejection of a collective bargaining agreement, the individual pilots contend that Wien failed to comply with Chapter 11. The alternative argument the individual pilots raise also relies on a judicial finding of breach; they aver that even if the court adopts Wien's position that the airline assumed the Agreement, Wien failed to comply with section 365(b)(1) of the Bankruptcy Code because it did not cure the alleged breach, as that section requires. We hold, however, that Wien was not in breach of the Agreement at, or subsequent to, the time it filed for bankruptcy.[7] Further, because on the record before us, Wien has complied with all of its obligations under the Agreement, we affirm the district court's holding that Wien assumed the Agreement.
 
 
 29
 First, through the settlement agreement, Wien has agreed to pay all pre-petition wages and benefits. As for claims the individual pilots pursue here, those relating to shutdown damages suffered as a result of the comprehensive furlough plan, there can be no breach of the Agreement because such a situation simply is not covered by any provision contained within the Agreement. This is consistent with our holding above that the issue concerning Wien's decision to suspend its services through a complete furloughing of its pilots is a major dispute.
 
 
 30
 In addition, the individual pilots' claim of breach would have us construe the Agreement as tantamount to a guarantee of continued employment. Such a construction is inconsistent with interpretation of the Agreement as a whole; the Agreement includes, for example, provisions for severance pay. Further, it is well established that a collective bargaining agreement cannot bind an employer to continue in business. "Collective bargaining ... results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone." J.I. Case Co. v. NLRB, 321 U.S. 332, 334-35, 64 S.Ct. 576, 578-79, 88 L.Ed. 762 (1944); see also Fraser v. Magic Chef--Food Giant Markets, Inc., 324 F.2d 853, 856 (6th Cir.1963).
 
 
 31
 Because we hold that Wien assumed the Agreement, it cannot be said that Wien's actions violated section 1113, the requirements of which only relate to rejection; nor can it be said that the airline violated section 365(b)(1) in its assumption of the Agreement because, as it did not breach the Agreement, it had no default to cure.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 45 U.S.C. Secs. 151 et seq. (1986). The RLA applies to the airline industry by virtue of 45 U.S.C. Secs. 181-187 (1986). See International Ass'n of Machinists v. Central Airlines, 372 U.S. 682, 685-89, 83 S.Ct. 956, 958-61, 10 L.Ed.2d 67 (1963)
 
 
 [2]
 We note first that the individual pilots' reliance on In re Continental Airlines Corp., 64 B.R. 874 (S.D.Tex.1986) is misplaced. In Continental, the court held that unions did not have standing to assert claims arising from an alleged breach of a collective bargaining agreement on behalf of individual employee-members against the Chapter 11 employer-airline. Id. at 879. The dispute in Continental, however, involved the interpretation of an existing agreement in regard to conditions that existed prior to the filing of bankruptcy; thus, it is distinguishable from the situation with which we are faced here, where the dispute surrounds an issue not contemplated by the parties in the drafting of the Agreement
 
 
 [3]
 While the correspondence between ALPA and its members may give rise to a claim by the pilots against ALPA for a breach of its duty of fair representation, that issue does not concern us here
 
 
 [4]
 Wien contends that the individual pilots may not challenge the confirmation plan for compliance with Chapter 11 because their notice of appeal from the bankruptcy court only specifically challenged the bankruptcy court's order that denied shutdown damages, and not the confirmation order itself, which the bankruptcy court issued a day later. We reject this argument. When it is apparent that a party intends to appeal from a district court order not specified in its notice of appeal, and the parties have briefed fully the merits of such an order, we have nonetheless reviewed the order. See United States v. Walker, 601 F.2d 1051, 1058 (9th Cir.1979). A similar result should follow in the context of an otherwise inept notice of appeal from a bankruptcy court order. Bankruptcy rule 8001(a), which sets forth the required contents for a valid notice of appeal from the bankruptcy court, conforms substantially with Fed.R.App.P. 3(c), and indeed, derives from the appellate rule. 9 Collier on Bankruptcy p 8001.08, at 8001-21 (15th ed. 1988). In addition, the appeal from a bankruptcy order to a district court generally follows the rules regarding appeals taken to Courts of Appeals from district courts. 28 U.S.C. Sec. 158(c). Here, it seems clear that the individual pilots sought to appeal from the entering of the confirmation plan as well as the specific order filed the day before, the district court reviewed issues relating to Wien's compliance with Chapter 11, and both parties briefed the issue both on appeal to the district court and this court
 
 
 [5]
 We reject the individual pilots' contention that procedures outlined in section 1113 also apply when an employer assumes a collective bargaining agreement. While section 1113 states that a debtor may assume or reject a collective bargaining agreement only in accordance with its provisions, the statute nonetheless only contains procedures that refer to rejection or unilateral modification of a collective bargaining agreement. Moreover, as the legislative history makes clear, Congress enacted section 1113 primarily because of its concern over employers using bankruptcy as a means of avoiding obligations under a collective bargaining agreement. See H.Rep. No. 882, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Admin.News 576, 577, 582, 586-88, 591-94
 
 
 [6]
 The individual pilots seek to rely on the district court's decision to enjoin Wien from implementing its furlough plan to substantiate their claim of breach. Even if issue preclusion attached to such a finding, the district court did not hold that Wien was in breach of the Agreement; rather, it held only that the Agreement did not address the use of furloughs to suspend service
 
 
 [7]
 The bankruptcy court made no explicit finding as to whether Wien had assumed, rejected, or modified the Agreement. Its order of confirmation stated, however, that "[t]he Debtor [Wien] has complied with the applicable provisions of Title 11" and "[a]ll executory contracts proposed in the Debtor's Plan to be assumed by the Debtor are hereby ordered and allowed to be assumed by the Debtor." In re Wien Air Alaska, No. 3X-84-00286 (Bankr.D.Alaska Apr. 17, 1985) (order confirming plan of reorganization)