In re LENDVEST MORTGAGE,
INC., Debtor.

Frank J. RATTO and Tosca M.
Ratto, Appellants,

v.

Charles E. SIMS, Successor Trustee for
the Estate of Lendvest Mortgage,
Inc., Appellee.

BAP No. NC 89–1926 RAsO.
Bankruptcy No. 188–01058.
Adv. No. 189–0100.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on June 27, 1990.

Decided Aug. 3, 1990.

John A. Klein, Santa Rosa, Cal., for appellants.

Barry Milgrom, San Francisco, Cal., for appellee.

Before RUSSELL, ASHLAND, and OLLASON, Bankruptcy Judges.

## I. FACTS

In August 1986, R.B. Hawkinson and Beth L. Hawkinson (the Hawkinsons) signed a promissory note in the principal amount of $61,800.00 payable to Lendvest Mortgage, Inc. (Lendvest), secured by a deed of trust on certain property located at 1919 Valencia Street, Napa, California. On or about October 15, 1986, Lendvest assigned the Hawkinsons' note to the appellants, Frank J. Ratto and Tosca M. Ratto (the Rattos). The assignment was accompanied by a Contract of Guarantee whereby Lendvest agreed to bear all risk of loss.

On June 14, 1988 an involuntary Chapter 7 petition was filed against the debtor, Lendvest Mortgage Inc., fka Napa Valley Mortgage, Inc., a mortgage broker. Lendvest then consented to an order for relief under Chapter 11 [1] and Charles E. Sims,

_____

**1.** The Chapter 11 petition was filed on June 24, 1988.

the appellee, was appointed as Chapter 11 trustee.[2]

On May 5, 1989 the trustee filed a complaint to determine the validity of the Rattos' lien, alleging that it was avoidable as an unperfected security interest in the estate's property pursuant to 11 U.S.C. § 544(a).[3] After the adversary proceeding had been commenced, the Hawkinsons paid off their note in full. The proceeds ($61,800 plus interest accrued to the date of payment) were placed in an interest bearing account pending the outcome of the adversary proceeding.

The bankruptcy court, in a Memorandum of Decision filed September 13, 1989, ruled that (1) the transaction was a loan made by the Rattos' to Lendvest because the risk of loss was shifted onto Lendvest and (2) that because the Rattos never had physical possession of the note assigned as security for the loan to Lendvest, the Rattos security interest in the note was unperfected and therefore, avoidable pursuant to § 544(a). Judgment ordering that the trustee was entitled to the proceeds in the trust account was entered on September 28, 1989. This timely appeal followed.

## II. ISSUE

Whether the bankruptcy court erred in determining that the Hawkinson note was not sold but was assigned to the Rattos as security for a loan to Lendvest.

## III. STANDARD OF REVIEW

Whether the transaction between Lendvest and the Rattos was a loan or a sale is a finding of fact reviewed for clear error. *Wien Air Alaska, Inc. v. Bachner*, 865 F.2d 1106, 1009 (9th Cir.1989); Bankr.R. 8013.

## IV. DISCUSSION

■ Where the risk of loss is shifted from the investor to the debtor through a

2. Charles E. Sims is the second Trustee in this case and was appointed on September 15, 1989.

3. All references to code sections are to Title 11 of the United States Code unless otherwise indicated.

contractual guarantee of repayment by the debtor, the transaction is a loan and not a sale. *In re Woodson*, 813 F.2d 266, 271 (9th Cir.1987); *In re Golden Plan of California, Inc.*, 829 F.2d 705, 709 (9th Cir. 1986); *In re S.O.A.W. Enterprises, Inc.*, 32 B.R. 279, 282 (Bankr.W.D.Tex.1983). If the transfer of funds from the Rattos to Lendvest is a sale, then the funds are effectively removed from the *res* of the estate. *In re Woodson* at 271. "Whether the parties intended outright sales or loans for security is determined from all the facts and circumstances surrounding the transactions at issues." *In re Golden Plan* at 709.

■ An examination of the documents in this case reveals that the risk of loss clearly was on Lendvest and not the Rattos. The "Contract of Guarantee & Servicing Agreement" recites that in exchange for 13.5% interest per annum, the Rattos as investors were making a loan of $61,800 to Lendvest[4] and that Lendvest

> guarantees to remit to Investor all payments per the terms and conditions of said Note, including any principal and interest payments required to be made by Borrower within 20 days of the payment due date. Such payment shall be remitted to Investor whether or not paid by Borrower. [Lendvest] shall additionally advance any and all sums to senior encumbrances, taxes, insurance or liens which [Lendvest] deems necessary to protect the security interest of Investor.[5]

This paragraph indicates that Lendvest was obligated to make payments to the Rattos whether or not the borrower made a payment to Lendvest.

If the borrower, the Hawkinsons, defaulted on their loan the agreement provided that Lendvest was still obligated to make full payment of principal and interest to the Rattos:

4. Formerly known as Napa Valley Mortgage Inc.

5. The party designated as the "Borrowers" were the Hawkinsons.

In the event a Notice of Default is recorded, [Lendvest] shall provide Investor with a copy of the "Notice of Default and Election to Sell Under Deed of Trust" recorded against said subject loan, and shall advise Investor, in writing, of intended publication of the Notice of Trustee's Sale at least thirty (30) days before the date of such publications.

The Rattos then had two options. Under option A, the Rattos could demand that Lendvest pay them "the then unpaid principal balance and accrued interest of the subject loan, excluding all advances made by [Lendvest], and excluding any prepayment charge." Under option B, the Rattos were entitled to instruct the trustee to proceed with a foreclosure sale with the proceeds to go to the Rattos account after reimbursing Lendvest for any advances it made. It also provided that "Investor may appear and bid at such sale, but if Investor does not, [Lendvest], on Investor's behalf, and as Investor's agent, shall enter an opening bid of the unpaid principal balance of the Borrower's Promissory Note plus advances, costs, fees, and charges authorized by law and/or incurred, or earned."

Under either option, in the event of default by the Hawkinsons, the Rattos were guaranteed that the funds they invested with Lendvest would be returned.

Additionally, the Rattos and Lendvest entered into a "Contract Agreement" with Lendvest whereby Lendvest guaranteed that the Rattos would have no loss at all:

Frank J. Ratto and Tosca M. Ratto are the Investors on that certain Second Note and Deed of Trust secured by the property commonly known as 1919 Valencia Street, Napa CA 94558. [Lendvest] does hereby agree to buy back all or a part of this Note at no loss of principal or interest to Frank J. Ratto and Tosca M. Ratto.

We agree with the bankruptcy court's conclusion that the facts of this case parallel the facts of *In re Woodson:*

In the case before us, permanent investors were not subject to any risk when they transferred funds to Woodson. They were paid monthly interest regard-

less of whether the original borrower paid Woodson. In the event of default, Woodson paid the investor the interest and the balance principal owed on the investor's "participation." ... Woodson did not merely guarantee a certain return, but effectively guaranteed against all risk of loss.... We conclude that the transactions with the permanent investors were loans. The permanent investors possessed none of the usual indicia of ownership. By contrast, Woodson retained all of the obligations of an owner and conducted itself throughout as owner. Simply calling transactions "sales" does not make them so.

*Woodson,* 813 F.2d at 271–72. Accordingly, we affirm the decision of the bankruptcy court.

### V. CONCLUSION

A transaction wherein investors transfer funds to a mortgage broker in return for 13.5% interest per annum, where the investors receive a guarantee from the mortgage broker for the full amount of the principal plus interest accrued and the mortgage broker assumes the risk is a loan and not a sale. The bankruptcy court correctly ruled that the nature of the transaction between the Rattos and Lendvest was a loan and not a sale.

AFFIRMED.