In re CASCADE ROADS, INC., Debtor.

**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Peter H. ARKISON, Trustee, Defendant–Appellee.**

Nos. 93–35112, 93–35377.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1994.

Decided Aug. 22, 1994.

757

Gary D. Gray, Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Sigurd B. Borgersen, Schwabe, Williamson, Ferguson & Burdell, Seattle, WA, Peter H. Arkison, Law Offices of Peter H. Arkison, Bellingham, WA, for defendant-appellee.

Before: GOODWIN, D.W. NELSON, and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

The United States appeals the district court's decision (1) affirming a bankruptcy court order directing payment of an outstanding Claims Court judgment owed to chapter 7 debtor Cascade Roads, Inc.; (2) upholding a bankruptcy court award of sanctions against the government for willful violation of the automatic stay; and (3) granting attorneys' fees and costs to Cascade for its appeal from the bankruptcy court.

After examining the equitable nature of bankruptcy setoff rights and their interaction with nonbankruptcy statutory provisions, we conclude that the bankruptcy court did not abuse its discretion by ordering the United States to disgorge the Claims Court judgment without deducting Cascade's tax liabilities. We hold, however, that the bankruptcy and district courts relied on inapplicable statutes in sanctioning the government. Accordingly, we affirm in part, reverse in part, and remand.

## I.

In 1980, Brazier Forest Products, Inc. hired Cascade Roads, Inc. to construct thirteen miles of logging road pursuant to Brazier's timber contract with the United States Forest Service. In the course of its performance, Cascade encountered a large volume of solid rock and incurred significantly greater excavation costs than anticipated. As a result, upon completion of the project Cascade filed a cost-overrun claim against the Forest Service, alleging that agency officials had misrepresented the amount of excavation work necessary under the contract.

After the Forest Service denied the overrun claim, Cascade and Brazier jointly filed a breach-of-contract action in Claims Court.[1] Shortly thereafter, both Cascade and Brazier filed petitions for reorganization under chapter 11 of the Bankruptcy Code. The bankruptcy court subsequently converted Cascade's case to a chapter 7 liquidation and confirmed Brazier's amended plan of reorganization, which provided for payment to Cascade of any proceeds received in the Claims Court litigation.[2]

In 1990, the Forest Service petitioned the Claims Court for the right to deduct debts *Brazier* owed the United States from any judgment in the pending litigation. Cascade's trustee ("the trustee") subsequently asked the bankruptcy court to hold the Forest Service in contempt for violating the automatic stay in the Cascade bankruptcy case, and the court agreed, concluding that the United States possessed no setoff rights because (1) the government's claim against Brazier lacked mutuality with Cascade's claim (nominally prosecuted by Brazier) against the government and (2) in any event, the government's conduct in stonewalling and withholding documents in the Claims Court litigation precluded it from obtaining the benefits of an equitable bankruptcy setoff. The United States filed a notice of appeal, but subsequently dismissed it.

1. In 1992, Congress redesignated the Claims Court as the "United States Court of Federal Claims." *See* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506.

2. Brazier originally confirmed a plan of reorganization that failed to reference the Claims Court action. Realizing this, the United States moved to dismiss that case on the ground that, under the *Severin* doctrine, jurisdiction no longer existed because the Claims Court could hear Cascade's claim only to the extent Brazier remained potentially liable for reimbursement, *see Pan Arctic Corp. v. United States,* 8 Cl.Ct. 546, 547–48 (1985) ("suit [against the United States] may be brought only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future") (quotation omitted), and Brazier's plan discharged any reimbursement claim Cascade might have had against it.

Before the Claims Court could rule on the government's motion, however, the bankruptcy court approved an amendment to Brazier's plan providing for Brazier to continue litigation against the Forest Service and to remit any judgment from the contract action to Cascade. The district court and the Ninth Circuit subsequently affirmed the plan modification. *See United States v. Brazier Forest Prods. (In re Brazier Forest Prods.),* 874 F.2d 817 (9th Cir.1989) (mem.); *United States v. Brazier Forest Prods. (In re Brazier Forest Prods.),* No. C87–839R (W.D.Wash.1987). As a result, the Claims Court denied the United States' motion to dismiss, *see Brazier Forest Prods. v. United States,* 11 Cl.Ct. 468, 469–70 (1987), and Brazier continued to pursue the action on Cascade's behalf.

In mid–1991, Brazier and the Forest Service reached a settlement and the Claims Court entered a judgment against the United States for $185,000 plus interest. The Department of Justice ("DOJ") referred the judgment (which was due directly to Cascade pursuant to Brazier's plan of reorganization) to the General Accounting Office ("GAO") with a letter indicating that a setoff might be available for debts *Cascade* owed the government. The DOJ subsequently requested that the GAO not pay the judgment until it had ascertained potential setoff rights.

Three months later, the trustee again asked the bankruptcy court to hold the United States in contempt for violating the automatic stay. The government responded by filing a motion for relief from the stay to deduct Cascade's tax liabilities from the Claims Court judgment. The bankruptcy court ultimately issued four relevant orders: (1) an order denying relief from the automatic stay ("Stay Order"); (2) an order denying the government's request for a setoff ("Setoff Order"); (3) an order directing payment of the Claims Court judgment to the bankruptcy estate ("Turnover Order"); and (4) an order awarding attorney's fees as a sanction for willful violation of the automatic stay ("Sanctions Order").

The United States filed notices of appeal from all four orders but, for unspecified reasons, subsequently dismissed the appeals of the Stay and Setoff Orders. The district court eventually affirmed the bankruptcy court in all regards, *United States v. Cascade Roads, Inc. (In re Cascade Roads, Inc.)*, No. C92–303C, 1992 WL 544948 (W.D.Wash. Nov. 23, 1992), and granted Cascade's request for fees as a sanction for the government's appeal ("Appeal Sanctions Order"), *id.*, 1993 WL 461297 (W.D.Wash. Feb. 5, 1993).

The United States appealed both orders to this Court and we consolidated the cases. The GAO subsequently paid the Claims Court judgment to Cascade, prompting the trustee to file a motion to dismiss as moot the government's appeal of the Turnover Order. The trustee also moved to limit the government's appeal of the bankruptcy court's denial of setoff, on the ground that the United States had not appealed the Setoff Order.

For the reasons set forth below, we deny Cascade's motions to dismiss and limit the appeal, affirm the Turnover Order, and reverse the Sanctions and Appeal Sanctions Orders.

## II.

The bankruptcy court's Turnover Order provided that "the United States shall immediately issue a check in satisfaction of the judgment against it in the United States Claim[s] Court ... in the amount of $185,000.00 plus interest, ... made payable to and delivered to Peter H. Arkison, Trustee in Bankruptcy for Cascade Roads, Inc." The United States argues that the Turnover Order is invalid because it contravenes 31 U.S.C. § 3728(a), which requires "[t]he Comptroller General [to] withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government."

### A.

We first consider the trustee's argument that this appeal is moot because the United States paid the Claims Court judgment to Cascade's bankruptcy estate after losing on appeal in the district court.

"[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal [is moot and] must be dismissed.... [However, w]hile a court may not be able to return the parties to the *status quo ante* ... [, an appeal is not moot if the] court can fashion *some* form of meaningful relief...." *Church of Scientology v. United States*, —— U.S. ——, —— – ——, 113 S.Ct. 447, 449–50, 121 L.Ed.2d 313 (1992) (quotation omitted) (holding that compliance with an order requiring production of documents does not render moot an appeal of that order). The trustee contends this appeal is moot because "[t]his court cannot give the government any additional relief even if it determines that the bankruptcy court erred in entering the

[Turnover] Order.... It cannot undo what is already done." We disagree.

The short answer to the trustee's argument is that, should the United States prevail, we can fashion effective relief merely by ordering the trustee to repay the judgment. *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449 (6th Cir.1982), is directly on point. In that case, the bankruptcy court ordered the State of Ohio to pay to the debtor certain funds allegedly due under a Medicaid program. The state complied with the order and then sought appellate review. The Sixth Circuit held that the state's appeal was not moot:

> The State of Ohio was and is entitled to a legal determination that the act of the bankruptcy judge in ordering payment of the money was unlawful.... That issue may have consequences in the further administration of the estate and in Ohio's ultimate right to obtain, if it can, a disgorgement of the monies so paid....
>
> ... [W]e are unable to say that the impact of the bankruptcy court orders if allowed to remain unchallenged (which would be the effect of a dismissal of the appeal for mootness) would not have some important bearing upon the parties. *We do not know at this point how Ohio may, in a practical way, get its money back, nor are we asked to decide the relative priorities that Ohio might enjoy in pursuing such an effort. It is enough for us to hold here that the turnover orders were unlawful....*

*Id.* at 463–64 (emphasis added).

Several Ninth Circuit cases reach similar results. In *Salomon v. Logan (In re International Environmental Dynamics, Inc.),* 718 F.2d 322 (9th Cir.1983), for example, we held that the appeal of a bankruptcy court order approving payment of interim fees to creditors' counsel was not moot even though the bankruptcy estate had paid the fees long before appellate review: "Because [the attorney] is a party to this appeal, this court could fashion effective relief by remanding with instructions to the bankruptcy court to order the return of erroneously disbursed funds.

Nor would it be inequitable to hear the merits of [the trustee]'s appeal ... [because the attorney] has known [for more than a year] that [the trustee] contests the bankruptcy court's order that he be paid...." *Id.* at 326 (citation omitted).

Similarly, in *Spirtos v. Moreno (In re Spirtos),* 992 F.2d 1004 (9th Cir.1993), we followed *International Environmental Dynamics* and held that a creditor's appeal of a bankruptcy court order exempting the debtor's beneficial interest in several pension plans was not moot even though the debtor had depleted the plans' assets: "We can fashion effective relief by ordering Debtor, who is a party to this appeal, to return the money to the estate. Nor would it be inequitable to address the merits of the appeal [because] Debtor knew at the time he received and spent his plan distribution that [the creditor] had appealed the bankruptcy court's decision." *Id.* at 1007.

This authority applies to the case at bar. The United States has consistently argued that it has the absolute right to deduct Cascade's tax liabilities from the Claims Court judgment, seeking immediate review of the bankruptcy and district court determinations to the contrary. Indeed, the government paid the judgment only after both courts had issued sanctions for failing to disgorge the money. Holding this appeal to be moot would "have the unwelcome effect of encouraging disobedience to a court's order if a stay could not be obtained, thus presenting the state with a choice of losing its right to appeal or noncompliance." *Madeline Marie Nursing Homes,* 694 F.2d at 463. Moreover, such a result would contravene the fundamental principle that "a debtor against whom a judgment for money is recovered may pay that judgment and bring a writ of error to reverse it.... [In so doing], the defendant has merely submitted to perform the judgment of the court and has not thereby lost his right to seek a reversal of that judgment by writ of error or appeal." *Mancusi v. Stubbs,* 408 U.S. 204, 207, 92 S.Ct. 2308, 2310, 33 L.Ed.2d 293 (1972) (quoting *Dakota County v. Glidden,* 113 U.S. 222, 224, 5 S.Ct. 428, 429, 28 L.Ed. 981 (1885)).[3]

---

**3.** The cases cited by the trustee are inapposite.

*Anheuser–Busch, Inc. v. Miller (In re Stadium*

The trustee is a party to this appeal and has been aware at all times that the United States would seek appellate review. Moreover, when the government paid the Claims Court judgment it notified the trustee that, if "the United States is successful [on appeal], we will seek to recover any judgment proceeds that you have distributed. Please advise any distributees that they may be ordered to disgorge such proceeds in the event the District Court's order is overturned on appeal."[4] If necessary, therefore, we could fashion effective relief by ordering the trustee to return the judgment. Given the trustee's notice and participation in this appeal, it would not be inequitable to do so. We conclude that this appeal is not moot.

**B.**

The trustee argues that, even if the appeal is not moot, we cannot review the merits of the government's setoff claim because the United States dismissed its notice of appeal from the Setoff and Stay Orders. (The government claims it took this course of action after concluding that "there was no reason to appeal from the [other] orders ..., since they could be renewed if the dispositive order directing payment was reversed." The trustee, on the other hand, attributes the dismissals to a "strategic decision" to shield a bankruptcy court finding of bad faith from the district court.) Specifically, the trustee contends that Federal Rule of Appellate Procedure 3(c) precludes any consideration of the setoff issue. *See* Fed.R.App.P. 3(c) (a notice of appeal must "designate the judgment, order or part thereof appealed from"). We disagree for two reasons.

First, the trustee complains only about the government's notices of appeal from the bankruptcy court to the district court. As a result, Bankruptcy Rule 8001(a), *not* Federal Rule of Appellate Procedure 3(c), provides the applicable rule. *E.g., Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014,

1021 (5th Cir.1991) ("Bankruptcy Rule 8001 governs the manner in which a bankruptcy court judgment or order is appealed to the district court. Although modelled after Fed. R.App.P. 3, Rule 8001 mandates different requirements for the contents of a valid notice of appeal."); *Wien Air Alaska, Inc. v. Bachner*, 865 F.2d 1106, 1111 n. 4 (9th Cir. 1989).

■ Unlike Rule 3(c), Rule 8001(a) does *not* require that notices of appeal to the district court "designate the judgment, order or part thereof appealed from." Rather, the bankruptcy rule requires only that a notice "contain the *names* of all parties to the judgment, order, or decree appealed from." Fed. R.Bankr.P. 8001(a) (emphasis added). The government's notice of appeal to the district court properly specified the *parties* to the appeal and therefore appears to comply with the rule.

■ Second, even if Rule 3(c) were to apply by analogy to Rule 8001(a), the trustee's argument would still fail.

> ... *When it is apparent that a party intends to appeal from a district court order not specified in its notice of appeal, and the parties have briefed fully the merits of such an order, we have nonetheless reviewed the order. A similar result should follow in the context of an otherwise inept notice of appeal from a bankruptcy court order....* Here, [for example,' it seems clear that the [appellants] sought to appeal from the entering of the confirmation plan as well as the specific order filed the day before, the district court reviewed issues relating to [the debtor]'s compliance with Chapter 11, and both parties briefed the issue on appeal to the district court and this court.

*Wien Air*, 865 F.2d at 1111 n. 4 (emphasis added) (citation omitted).[5] In this case, the

---

*Management Corp.)*, 895 F.2d 845, 847–49 (1st Cir.1990), involved a specific provision of the Bankruptcy Code, section 363(m), which protects good faith purchasers of a debtor's property from reversal on appeal unless an objecting party obtains a stay. *Hall v. United States*, 749 F.2d 373, 373–74 (7th Cir.1984), merely restated the basic proposition that an appeal of the denial of an

injunction becomes moot after the creditor pays a levy and "[t]here is nothing left to enjoin."

**4.** At oral argument, the trustee acknowledged that he has not in fact distributed any of the money.

**5.** *See Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) (presented with a

parties fully briefed the setoff issue before the district court and this Court. Moreover, the district court addressed the issue in its opinion. And, most importantly, we "can easily infer [the government]'s intent to appeal" the merits of the setoff issue because resolution of the Turnover Order "clearly is dependent upon the disposition of" the government's setoff argument. *See Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1414–15 (5th Cir.1992) ("We can easily infer Toma's intent to appeal the district court's affirmance of the bankruptcy court's Disgorgement Order [because] the Disgorgement Order clearly is dependent upon Toma's administrative expense claim."), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 1892, 123 L.Ed.2d 646 (1993). Indeed, the bankruptcy court considered the issues arising from the Stay, Setoff, Turnover, and Sanctions Orders to be so interrelated that it attached the same Findings of Fact and Conclusions of Law to each individual order.[6]

We therefore will address the United States' argument that it is entitled to a setoff for Cascade's tax liabilities.

### C.

Turning to the merits, the United States argues that 31 U.S.C. § 3728(a)[7] enables it to deduct Cascade's tax liability from the Claims Court judgment and that, as a result, the Turnover Order impermissibly nullifies the government's statutory rights. The bankruptcy court disagreed, holding that any right to "setoff is permissive and not mandatory" and that, because "this case is replete with inequitable conduct on the part of the Government, ... the equitable remedy of setoff is not available to it." We agree.

Section 542(b) of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*" 11 U.S.C. § 542(b) (emphasis added). Accordingly, because the Claims Court judgment is a matured debt that the United States owes to Cascade, section 542(b) authorizes the Turnover Order unless the judgment "may be offset under section 553."

Section 553 provides, that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the

---

defective notice of appeal, an appellate court may decide any issue for which "petitioner's intention to seek review ... was manifest"); *Medrano v. City of Los Angeles*, 973 F.2d 1499, 1502–03 (9th Cir.1992) (same), *cert. denied,* —— U.S. ——, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993); *see also McCarthy v. Mayo*, 827 F.2d 1310, 1314 (9th Cir.1987) ("A mistake in designating the order being appealed is not fatal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake. [The intent to appeal] can be fairly inferred ... [where the] opening brief addressed the propriety of the [disputed] ruling.... [D]efendants cannot claim prejudice [when] they also fully briefed the issue.") (quotations and citations omitted); *see generally Smith v. Barry*, 502 U.S. 244, ——, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992) ("While a notice of appeal must specifically indicate the litigant's intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts.") (citations omitted).

6. The case upon which the trustee relies, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), is inapposite because it involved the failure to designate certain *parties* who sought appellate review. The Court's logical conclusion was merely that "[t]he specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking appeal." *Id.* at 318, 108 S.Ct. at 2409. At least one circuit has determined that the differences between Rule 8001(a) and Rule 3(c) mandate the conclusion "that the specificity requirement set out in *Torres* is inapplicable to a notice of appeal from a bankruptcy court judgment or order." *Case,* 937 F.2d at 1020. In any event, the United States' notices of appeal in this case gave "fair notice" of the issues for which it sought review.

7. Section 3728(a) requires "[t]he Comptroller General [to] withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government." 31 U.S.C. § 3728(a).

debtor that arose before the commencement of the case...." *Id.* § 553(a). "[T]his provision is not an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of nonbankruptcy law." *United States v. Norton,* 717 F.2d 767, 772 (3d Cir.1983). *Accord, e.g., Carolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group Inc.),* 963 F.2d 1269, 1277 (9th Cir.) ("Section 553 does not by itself create a right of setoff. Instead, it merely allows setoffs in bankruptcy to the extent they are allowed under [nonbankruptcy] law."), *cert. denied,* — U.S. —, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992); *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier),* 127 B.R. 233, 237 (9th Cir. BAP 1991) ("The Code does not create or expand the setoff right but instead merely preserves the common-law right under applicable non-bankruptcy law.") (quotation omitted).

■ Thus, assuming that the Claims Court judgment and the tax claims against Cascade are "mutual" debts within the meaning of the statute,[8] section 553 would appear to preserve the government's setoff rights under section 3728(a). Section 553, however, "is permissive, not mandatory. 'Its application, when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equality.'" *Norton,* 717 F.2d at 772 (quoting 4 *Collier on Bankruptcy* ¶ 553.02 at 553–11 (15th ed. 1983)). *Accord, e.g., Buckenmaier,* 127 B.R. at 237 ("While setoffs are generally favored they are not automatically

permitted."); *Pieri v. Lysenko (In re Pieri),* 86 B.R. 208, 210 (9th Cir. BAP 1988) ("Under the Code, the allowance of setoff is not automatic but is instead permissible at the discretion of the bankruptcy court, applying the general principles of equity. Setoff should not be allowed when it would be inequitable or contrary to public policy to do so.") (citations omitted); *Parkway Plaza Investors v. Bacigalupi (In re Bacigalupi, Inc.),* 60 B.R. 442, 445 (9th Cir. BAP 1986) ("The allowance or disallowance of a setoff is a decision which ultimately rests in the sound discretion of the bankruptcy court."); *See also FDIC v. Bank of America,* 701 F.2d 831, 836–37 (9th Cir.) ("Setoff will not be permitted when it would be inequitable or contrary to public policy to do so."), *cert. denied,* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *Riggs v. Government Employees Fin. Corp.,* 623 F.2d 68, 73 (9th Cir.1980) ("Despite the seemingly mandatory language of [the setoff provision under the former Bankruptcy Act], it is well settled that allowance of a setoff lies within the sound discretion of the trial court.").

The bankruptcy court clearly recognized this discretionary aspect of section 553:

... [T]his case is replete with inequitable conduct on the part of the Government; and as a result, this case is starting to look something like *Bleak House.*

From the very beginning, the Government stonewalled on discovery in the Court of Claims. And it wasn't until the eve of trial in the Court of Claims when the Government finally produced documentation which it should have produced years before. The documents not only corrobo-

8. In fact, however, the "mutuality" of the two debts is not clear. On one hand, the bankruptcy court implied that mutuality existed when it held the United States could not deduct *Brazier's* tax liabilities from the Claims Court judgment because *Cascade* was the real party in interest. On the other hand, Cascade did not sue the Forest Service directly and therefore is not in privity with the agency.

Moreover, the Forest Service (which owes the Claims Court judgment) and the IRS (to which Cascade owes taxes) are different government agencies. "[T]here is a divergence of authority as to whether mutuality exists among [different] governmental agencies for purposes of setoff." *Shugrue v. Fischer (In re Ionosphere Clubs, Inc.),* 164 B.R. 839, 842–43 (Bankr.S.D.N.Y.1994) (an-

alyzing the issue, collecting cases, and concluding that the government is not a single entity for mutuality purposes). *Compare, e.g., State of Illinois v. Lakeside Community Hosp., Inc. (In re Lakeside Community Hosp., Inc.),* 151 B.R. 887, 892 (N.D.Ill.1993) ("the three [state] departments are each separate creditors for purposes of § 553, and not the same parties for establishing mutuality for purposes of setoff under § 553") *with, e.g., In re Mohar,* 140 B.R. 273, 277 (Bankr. D.Mont.1992) ("there is but one federal government, made up of independent agencies, which agencies stand in the same capacity to satisfy the mutuality of parties concept of the setoff doctrine").

We express no opinion on this issue.

rated the debtor's position, but showed that the Forest Service knew from the very start that the debtor's position was correct.

Then with the knowledge of the merit of the debtor's position, the Government forced years of litigation in the Court of Claims, litigation in this court, litigation in the District Court, and in the Ninth Circuit. And ultimately, on the eve of trial in the Tax Court, the Government capitulated.

Now we have this freeze bit. I suppose that I could speak to the Government's conduct in terms of morals and ethics. All I am going to say is that its conduct has been inequitable and, therefore, I feel that the equitable remedy of setoff is not available to it.

Now, there may be creditors here who have been deprived of any dividends for eight years; and that deprivation has been due to the Government. If the creditors receive any kind of a dividend, they will not be compensated for the delay; and they have been prejudiced.

On appeal, the government does not dispute this assessment of its conduct, contending only that "[t]he bankruptcy court overstepped its equitable authority by abrogating the government's right of setoff under § 3728 on the ground that the United States had behaved 'inequitably' in the Claims Court litigation and in withholding payment...." The government argues as follows: "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). Because section 553 incorporates nonbankruptcy setoff rights, any "discretion to disallow setoffs for equitable reasons ... must inhere in the nonbankruptcy law governing the setoff right asserted. No such equitable limitations exist on the government's right under 31 U.S.C. § 3728...." Therefore, the bankruptcy court had no "basis for extinguishing the right of setoff [and] could not order the United States to pay over the judgment un-

der § 542(b), since the obligation to pay a matured debt to the estate in that provision is subject to setoff rights" such as those set forth in section 3728. Moreover, because section 3728 creates setoff rights, the United States had a secured claim "to the extent of the amount subject to setoff." 11 U.S.C. § 506(a). Cascade did not provide adequate protection to the government for the use of that secured interest, *see id.* §§ 361, 363(c)(2), and the Turnover Order is therefore not authorized by any provision of the Bankruptcy Code.

Given the bankruptcy court's findings of governmental misconduct in this case, we must disagree.

Initially, we note the government's argument that the bankruptcy court's "discretion to disallow setoffs for equitable reasons ... must inhere in the nonbankruptcy law governing the setoff right asserted" contravenes the statements of equitable discretion that appear in the case law. As noted above, courts regularly state that "[t]he application of setoff ... is permissive and lies within the equitable discretion of the trial court.... [W]hen justice dictates, setoff must be denied." *DuVoisin v. Foster (In re Southern Indus. Banking Corp.),* 809 F.2d 329, 332 (6th Cir.1987) (citations omitted). Indeed, "[m]erely because statutory law creates a right of setoff, a bankruptcy court need not automatically enforce the right.... *[E]ven if setoff is authorized [by statute], it is within the bankruptcy judge's discretion, to be exercised within the principles of equity."* *Lakeside Community Hosp.,* 151 B.R. at 890 (citations omitted) (emphasis added). Other than to reiterate that "setoffs in bankruptcy have been generally favored, and a presumption in favor of their enforcement exists," *De Laurentiis Entertainment Group,* 963 F.2d at 1277 (quotation omitted), the United States points to no authority for the proposition that equitable discretion must spring from a source other than the "overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction." *Bank of Marin v. England,* 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966).[9]

9. The conclusion that the Bankruptcy Code independently grants courts the equitable discretion

Moreover, to the extent the United States contends the bankruptcy court had discretion only to *delay* a setoff rather than *deny* it entirely (which was the combined effect of the Stay, Setoff, and Turnover Orders), it is incorrect:

> The bankruptcy cases in which courts have exercised discretion to block a setoff may be divided into two general categories.
>
> In one class of cases, the creditor is denied the immediate right of setoff, but the setoff claim is treated as a secured claim as provided by Bankruptcy Code section 506(a). . . .
>
> *A second class of cases[, however,] denies all right of setoff to a creditor either on grounds of public policy or because the creditor committed an inequitable, illegal or fraudulent act.*

*Blanton v. Prudential–Bache Sec. (In re Blanton),* 105 B.R. 321, 337 (Bankr.E.D.Va. 1989) (emphasis added) (collecting cases).

Several cases are illustrative. In *Lakeside Community Hospital,* for example, the state of Illinois sought to deduct the debtor's tax liabilities (owed to the Department of Revenue) from the amount the Department of Public Aid owed to the debtor. *Lakeside Community Hosp.,* 151 B.R. at 889. In fact, a state statute specifically required the state to setoff these claims. *Id.* at 890. Nevertheless, the bankruptcy court issued a turnover order denying setoff and requiring the state to pay the debtor in full. *Id.* The district court affirmed, holding that the claims lacked mutuality, *id.* at 891–93, and that, "even if the requisite mutuality exists, [it] must still affirm the bankruptcy court's decision on principles of equity," *id.* at 893. Concluding

that "[e]quity may override a creditor's satisfaction of technical statutory requirements," *id.* at 894, the court affirmed because "[a]llowing setoff would not serve the goals of the Bankruptcy Code nor the principles of equity," *id.*

Similarly, the bankruptcy court in *In re Lincoln,* 144 B.R. 498 (Bankr.D.Mont.1992), issued an order denying setoff and requiring the government to pay the bankruptcy estate's claim. Although a specific statute authorized a setoff, the court concluded "that the equities require denial" of both setoff and the government's request for secured status on the setoff claim. *Id.* at 502. *In re Hazelton,* 85 B.R. 400 (Bankr.E.D.Mich.), *rev'd on other grounds,* 96 B.R. 111 (E.D.Mich.1988), reaches the same result. In *Hazelton,* the bankruptcy court recognized that "[t]he Farmers Home Administration can establish a non-bankruptcy right to setoff under regulations . . . which permit the FmHA to ask the Commodity Credit Corporation for setoffs to recover a debt owed the FmHA." *Id.* at 403. Nevertheless, the court "decline[d] to allow [the] request to exercise a postpetition setoff" and ordered the government "to turn over the final payment on the" debt owing to the bankruptcy estate. *Id.* at 405, 406. The court did because it "infer[red] that FmHA decided to setoff the CCC debt because of Debtor's decision to invoke the protection of the Bankruptcy Code," *id.* at 405, and because "allowing the setoff is inconsistent with the purposes of chapter 12 and the rehabilitation of American farmers," *id.*

Several circuit decisions are comparable. In *Riggs,* for example, we affirmed the district court's denial of setoff where a creditor was liable to the debtor under the Truth–in–

---

to deny setoff claims is consistent with the statute's legislative history. The former Bankruptcy Act enunciated setoff rights in mandatory language: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account *shall* be stated and one debt *shall* be set off against the other, and the balance only shall be allowed or paid." 11 U.S.C. § 108(a) (emphasis added) (repealed 1978). Nevertheless, courts interpreted the statute to permit setoff only "in the sound discretion of the trial court." *Riggs,* 623 F.2d at 73.

Section 553, which does not contain such mandatory language, was intended to restrict the

former setoff provision, which "is now considered to have been too broad." 4 *Collier on Bankruptcy* ¶ 553.02 at 553–10 (15th ed. 1994). It would be anomalous to conclude (as the government urges) that, in cases where section 553 incorporates non-discretionary setoff law, the bankruptcy court possesses no equitable authority to deny setoffs. Such a result would give creditors greater setoff rights under the Bankruptcy Code than under the former Bankruptcy Act and would, therefore, directly contravene the legislative purpose of limiting setoff rights.

Lending Act. After recognizing that "it is well settled that allowance of a setoff lies within the sound discretion of the trial court," *Riggs*, 623 F.2d at 73, we concluded that "we cannot say that the district judge abused his discretion by denying [the] request for a setoff. The denial clearly effectuated the deterrent and self-enforcement provisions of the Act." *Id.* at 75.

The Third Circuit's *Norton* decision, in which the IRS retained the debtors' tax overpayments and sought to apply them to unrelated liabilities, is similar. After the bankruptcy court ordered the IRS to pay the entire refund to the debtors, the IRS appealed, arguing that the court had "extinguish[ed] the creditor's right to set off mutual claims and debts because the IRS would no longer have any funds to set off against the [debtors]' tax liabilities." *Norton*, 717 F.2d at 773. Specifically, the IRS noted that 26 U.S.C. § 6402(a) allowed it to "credit the amount of [an] overpayment ... against any liability in respect of an internal revenue tax ...." *Id.* at 772. The Third Circuit disagreed: "[T]hose who drafted [the Bankruptcy Code] knew that [the] free exercise [of setoff rights] could inhibit rehabilitation and bankruptcy policies like fair distribution of funds inadequate to satisfy the debts of the petitioner in bankruptcy.... Even creditors whose claims are secured under the Code must submit to the risk inherent in judicial supervision of the rights they normally would have to enforce their claims against property of the debtor." *Id.* at 773.

■ In this case, the bankruptcy court concluded that the government's conduct in the Claims Court litigation and the two bankruptcy cases was highly inequitable. Specifically, the court noted that the government's endless string of meritless defenses and delays held up distribution to Cascade's creditors for nearly a decade. Given this bad-faith conduct, we cannot say that the court abused its discretion by exercising equitable authority to deny the United States' request to setoff the Claims Court judgment with Cascade's tax liabilities.[10] Consequently, we hold that the Turnover Order was permissible under section 542(b) of the Bankruptcy Code.

## III.

In addition to ordering the government to pay the Claims Court judgment, the bankruptcy court determined that the United States violated the Bankruptcy Code's automatic stay, *see* 11 U.S.C. § 362(a), by "freezing" payment of the judgment pending investigation of a possible setoff: "I conclude that the action taken, the so-called freeze, was clearly intentional, was in violation of the stay, and is the basis for damages under Section 362." We reverse the award of sanctions.

■ Both the bankruptcy and district courts concluded that sanctions against the United States were available under section 362(h), which provides that "[a]n individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). After the government filed this appeal, however, we held in another case that *corporate* debtors may not recover sanctions under section 362(h) because the statute refers only to "*individual[s]* injured by any willful violation of a stay." *Johnson Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618–20 (9th Cir.1993). *See Chugach Timber Corp. v. Northern Stevedoring & Handling Corp. (In re Chugach Forest Prods., Inc.)*, 23 F.3d 241, 244 n. 4 (9th Cir.1994) (explaining *Goodman* ). Therefore, because Cascade is a corporate debtor, section 362(h) does not authorize the Sanctions Order.

The trustee concedes this point but argues that we nevertheless can affirm the Sanctions Order on the ground that "[t]he record is absolutely clear that [the bankruptcy court]

---

10. We also note that the United States did not raise section 3728 until its appeal to the district court. Before the bankruptcy court, the government argued only that it possessed setoff rights under 31 U.S.C. § 3716, a non-mandatory setoff provision which arguably does not apply to bank-ruptcy proceedings, *see In re Britton*, 83 B.R. 914, 917 (Bankr.E.D.N.C.1988). We cannot conclude that the bankruptcy court abused its discretion by denying a setoff supposedly mandated by a statutory provision that the government never even brought to the court's attention.

would have imposed sanctions under the contempt power if [it] was unable to use Section 362(h)." While we did note in *Goodman* that "an injured corporation [may] recover damages caused by a violation of the automatic stay under a different theory: ordinary civil contempt." *Goodman*, 991 F.2d at 620, we emphasized that "pursuant to civil contempt, whether damages shall be awarded is discretionary," *id.* Therefore, we think it best to remand this case "to give the bankruptcy court the opportunity to exercise that discretion." *Chugach Forest Prods.*, 23 F.3d at 244 n. 4. We express no opinion at this time on the way in which the bankruptcy court, if it chooses to do so, could impose such sanctions. *See Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.)*, 827 F.2d 1281, 1283–91 (9th Cir.1987) (holding that bankruptcy courts lack independent authority to issue contempt sanctions but may recommend sanctions subject to district court review); *Havelock v. Taxel (In re Pace)*, 159 B.R. 890, 904 (9th Cir. BAP 1993) ("Although the court in *Goodman* ... refer[red] in common parlance to 'contempt' for violation of the automatic stay, what is clearly meant is sanctionable conduct.... While *Sequoia* questions the power of a bankruptcy court to issue contempt orders, there is no question of a bankruptcy court's power to award sanctions."); *see generally, Brown v. Ramsay (In re Ragar)*, 3 F.3d 1174, 1177–80 (8th Cir.1993) (discussing "questions that have divided the Circuits" on the power of bankruptcy courts to issue sanctions for contempt).[11]

## IV.

In addition to affirming the bankruptcy court orders, the district court awarded to Cascade its fees and costs for the appeal. The court concluded that section 362(h) and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, independently authorized such an award. We reverse and remand because neither statute is applicable to this case.

As noted above, *Goodman* forecloses the possibility of an award to Cascade under section 362(h). *Goodman*, 991 F.2d at 618–20. The Appeal Sanctions Order must fail, therefore, unless permissible under a different statute. The district court found authorization in EAJA, which provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government contends, however, that the only possible authorization for sanctions in this case is 26 U.S.C. § 7430, which provides that, "[i]n any administrative or court proceeding which is brought by or against the United States *in connection with* the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or settlement for [reasonable attorney's fees]." 26 U.S.C. § 7430(a) (emphasis added). We agree.[12]

**11.** Because we remand on the basis of the bankruptcy court's section 362(h) error, we need not address the government's argument that it did not violate the automatic stay by "freezing" the Claims Court judgment. *Compare Bank of America v. Edgins (In re Edgins)*, 36 B.R. 480, 483–84 (9th Cir. BAP 1984) (bank does not violate automatic stay by "freezing" debtors' account while determining setoff rights) *and In re Lough*, 163 B.R. 586, 588 (Bankr.D.Idaho 1994) (same) *with B.F. Goodrich Employees Fed. Credit Union v. Patterson (In re Patterson)*, 967 F.2d 505, 509–13 (11th Cir.1992) (credit union violates the stay by "freezing" debtors' account pending determination of setoff rights) *and SBA v. Rinehart*, 887 F.2d 165, 167–69 (8th Cir.1989) (government agency violates the stay by "holding" payments owing to the debtor pending determination of setoff rights) *and United States v. Reynolds*, 764

F.2d 1004, 1006–07 (4th Cir.1985) (same) *and Norton*, 717 F.2d at 771–74 (same).

We do find it hard to believe, however, that the government could violate the automatic stay simply by requesting a judicial determination of whether or not to obey section 3728's statutory prohibition against payment of a judgment. It seems to us that the mandatory nature of section 3728 distinguishes this case from the other decisions, all of which involve some discretionary determination of whether or not to seek a setoff, in which courts have concluded that creditors violate the stay by "freezing" payment to the debtor.

**12.** The circuits are divided about whether bankruptcy courts are "courts of the United States" and therefore have authority to award fees under EAJA or section 7430. *See Grewe v. United States*

■ EAJA does not apply to "any proceeding to which section 7430 of the Internal Revenue Code ... applies." 28 U.S.C. § 2412(e). Thus, "[i]n the cases to which § 7430 applies it is exclusive and precludes recovery under the EAJA." *Smith v. Brady,* 972 F.2d 1095, 1099 (9th Cir.1992). *Accord, e.g., Grewe,* 4 F.3d at 301. Therefore, if the proceedings in this case are "in connection with the determination, collection, or refund of any tax," section 7430 and not EAJA applies. We conclude section 7430 is applicable.

We have recognized that, "[w]hile it may be true that not every case where the IRS is a party should automatically be considered a case arising 'in connection with' the determination of a tax, a broad reading of § 7430 in this case better effectuates Congressional intent in enacting this provision." *Smith,* 972 F.2d at 1100. In *Smith,* for example, the plaintiffs had filed suit against the IRS, "asserting violations of their civil and constitutional rights and seeking to account for all existing copies [of an allegedly false letter sent by the IRS], to expunge the Letter from the [their] files, to enjoin the IRS from disseminating the Letter ..., and to prevent the IRS from degradingly labeling [the plaintiffs' church] as a 'sham.'" *Id.* at 1096. After settling, the plaintiffs sought and received attorney's fees under EAJA. On appeal, we concluded that section 7430, and not EAJA, was the applicable statute. In so holding, we adopted a broad, "but for" analysis:

> ... The Smiths cast the action as "brought solely to redress violations of their constitutional rights," which "simply has nothing to do with the Smiths' taxes." We cannot accept [that] argument. *Were it not for the IRS audit to determine if the Smiths paid their correct tax, the offending letter would not have been sent.* Furthermore, the primary function of the

Smiths' request that the IRS not use this letter in the future can only be to protect the deductions for donations to the Church.... Thus, *although there were collateral purposes to the Smiths' suit, it was clearly connected to IRS actions in determining Smiths' taxes.*

*Id.* at 1099 (emphasis added).

■ Applying *Smith* to this case, we think it clear that the district court proceedings were "in connection with" the determination and collection of Cascade's taxes. Specifically, the proceedings emanated directly from the trustee's attempt to prevent the United States from exercising a setoff for the Cascade tax claim. As the district court recognized, "the IRS's claim against the debtor arose from the debtor's delinquent taxes. The debtor's claim arose pursuant to the IRS's attempt to collect those taxes. *The basis of both cases revolve around the same core facts, the debtor's unpaid taxes.* Therefore, the basic facts relating to the government's tax claim is logically related to the government's collection activities." (emphasis added). Indeed, even the trustee initially asserted that Cascade was entitled to fees under section 7430 because "it was the prevailing party in the action to collect amounts owing by Cascade to the Government on taxes." Thus, "but for" the government's assertion of setoff rights in an effort to collect Cascade's taxes, the proceedings in this case never would have taken place. Section 7430 applies.

Two bankruptcy decisions from other circuits confirm our conclusion. In *Grewe,* for example, the Fourth Circuit followed *Smith* and held that section 7430 applied to the debtors' action against the IRS for violating section 524 of the Bankruptcy Code by seeking to collect discharged taxes. Although recognizing that the action was "rooted in the IRS's violation of the Bankruptcy Code,"

*(In re Grewe),* 4 F.3d 299, 303–05 (4th Cir.1993) (discussing the issue and collecting cases), *cert. denied,* —— U.S. ——, 114 S.Ct. 1056, 127 L.Ed.2d 377 (1994). In the Ninth Circuit, courts have split on the question. *Compare United States v. Yochum (In re Yochum),* 156 B.R. 816, 818 (D.Nev.1993) ("because bankruptcy courts are not [] Article III courts, they cannot be considered a 'court of the United States' for

purposes of awarding fees under § 7430") *with United States v. Germaine (In re Germaine),* 152 B.R. 619, 627 (9th Cir. BAP 1993) ("the bankruptcy court may award attorney's fees under 26 U.S.C. § 7430").

We express no opinion on the issue because, in this case, the *district court* invoked EAJA to sanction the United States. The bankruptcy court neither discussed nor applied either statute.

*Grewe,* 4 F.3d at 302, the court nevertheless held that, because "the underlying lawsuit ... stemmed from the IRS's impermissible attempt to collect taxes which had previously been discharged[,] ... the proceedings in the present case were clearly 'brought ... in connection with the ... collection ... of any tax,' as described in 26 U.S.C. § 7430(a)." *Id.* at 303. Similarly, in *United States v. McPeck,* 910 F.2d 509 (8th Cir.1990), the Eighth Circuit held that section 7430 applied to a debtor's action against the IRS for violating the automatic stay by attempting to collect taxes during bankruptcy proceedings. The court concluded the debtor's action, although based upon section 362(a) of the Bankruptcy Code, was brought in connection with the collection of taxes under section 7430. *Id.* at 513.

We hold, therefore, that the district court erred by relying upon EAJA to issue the Sanctions Order. Accordingly, we reverse and remand to that court for consideration of whether to award sanctions under section 7430, the applicable statute.[13]

### V.

Thus, we conclude that, despite the government's mandate under section 3728, the bankruptcy court retained equitable authority to deny a setoff. Under the unique facts of this case, the court did not abuse its discretion by exercising that authority and ordering payment of the Claims Court judgment. However, because section 362(h) does not authorize an award of sanctions to a corporate debtor, the bankruptcy court did err by sanctioning the United States for violating the automatic stay. Moreover, because it applied EAJA instead of 26 U.S.C.

§ 7430, the district court erred by awarding sanctions on appeal.

We therefore affirm the Turnover Order, reverse the Sanctions Order, and reverse the Appeal Sanctions Order and remand to the district court. The parties shall bear their own costs on appeal.[14]

**AFFIRMED in part. REVERSED in part. REMANDED.**

---

**13.** In making this determination, the district court must consider whether the trustee has "establish[ed that] 'the position of the United States was not substantially justified.' " *TKB Int'l, Inc. v. United States,* 995 F.2d 1460, 1468 (9th Cir. 1993) (quoting 26 U.S.C. § 7430(c)(4)(A)(i)). *See, e.g., Norgaard v. CIR,* 939 F.2d 874, 881 (9th Cir.1991). The court must also determine whether the trustee is a "prevailing party" within the meaning of 26 U.S.C. § 7430(c)(4)(A)(iii). The record on appeal, which does not reveal to whom the district court intended to award fees and which is devoid of any financial information on the trustee or Cascade, does not enable us to

make such a determination. *Compare IRS v. Brickell Inv. Corp. (In re Brickell Inv. Corp.),* 922 F.2d 696, 702–03 (11th Cir.1991) (chapter 11 corporate debtor-in-possession may recover fees under section 7430) *with Gower v. Farmers Home Admin. (In re Davis),* 899 F.2d 1136, 1142–45 (11th Cir.) (chapter 7 trustee for individual may not recover fees under EAJA), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).

**14.** We deny Cascade's request for fees on appeal to this court.