In re Arthur REPOSA, Peter
Reposa, Debtors.

Louis A. GEREMIA, Trustee,
Arthur Reposa and Peter
Reposa, Plaintiffs,

v.

NORTH ATLANTIC FISHING, INC.
and Herbert Lee, Defendants.

Bankruptcy Nos. 85–00579 and 86–00060.
Adv. No. 87–0021.

United States Bankruptcy Court,
D. Rhode Island.

Sept. 20, 1995.

William Y. Chaika, Chaika & Chaika, Providence, RI, for Arthur Reposa.

Louis A. Geremia, Chapter 7 Trustee, Geremia, DeMarco & Christelis, Providence, RI.

Stokes E. Mott, Jr., Philadelphia, PA, for defendants.

Thomas H. Quinn, Jr., Quinn, Schechtman & Teverow, Providence, RI, for Peter Reposa.

### DECISION AND ORDER MAKING ADDITIONAL FINDINGS, AND AMENDING JUDGMENT

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on May 4, 1995, on the Plaintiffs'[1] Motion to Make Findings and/or Amend

---

**1.** Plaintiffs are the Chapter 7 Trustee, Louis A. Geremia, Esq., and the Debtors in the consolidated bankruptcy cases of Arthur Reposa and Peter Reposa, father and son (hereinafter referred to as "Reposas").

Judgment regarding our Decision and Order dated August 29, 1994. This litigation has been shuttling back and forth in the courts for more than eight years, at least five times before this Court, with two excursions to the District Court, before two different judges. In the circumstances, any recitation of the travel or background would be a little superfluous. *See In re Reposa*, 94 B.R. 257 (Bankr.D.R.I.1988); *In re Reposa*, Ch. 7 Case Nos. 85–00579, 86–00060, Adv. No. 87–0021, 1991 WL 519626 (D.R.I. Mar. 11, 1991); *Reposa v. North Atlantic Fishing, Inc. (In re Reposa)*, 155 B.R. 809 (Bankr.D.R.I.1991); *North Atlantic Fishing, Inc. v. Geremia*, 153 B.R. 607 (D.R.I.1993); *Reposa v. North Atlantic Fishing, Inc. (In re Reposa)*, 171 B.R. 722 (Bankr.D.R.I.1994).

By the instant motion, the Plaintiffs raise three issues:

(1) If interest accrues on the compensatory damage award; (a) when does it start, and (b) at what rate?

(2) Whether the judgment must be amended so that Lee and NAF "do not profit from their fraud," in light of the prior undisturbed findings of Lee/NAF's fraudulent conduct and intentional wrongdoing?

(3) Whether the instant award of compensatory and punitive damages should be deducted from Lee and NAF's proof of claim, and if so, at what point in time, and in what amount?

Upon review of our August 29, 1994 Decision and Order, the written submissions, and the arguments presented at the May 4, 1995 hearing, we agree, as the Plaintiffs now argue, that our prior decision did not adequately or correctly address these issues.[2] Accordingly, upon reconsideration, we make the following additional or revised findings of fact, and amend the August 1994 judgment as follows:

---

2. The Defendants continue to argue that the imposition of punitive damages is not warranted by

## I. *Interest on the Compensatory Damage Award*

▆ In our August 1994 decision, on remand and instructions from Chief Judge Lagueux, we awarded compensatory damages of $59,395, upon which interest accrues pursuant to R.I.Gen.Laws § 9–21–10 (pre-judgment interest), and 28 U.S.C. § 1961 (post-judgment interest). Under Rhode Island law, pre-judgment interest on a pecuniary damage award accrues at 12% per annum from the "date the cause of action accrued." The Plaintiffs' cause of action accrued at the time the Reposas became aware of the defects in the vessel, and when the fraudulent representations made by Lee to induce the sale were discovered. The first such incident manifested itself on July 1, 1984. Therefore, Plaintiffs are entitled to statutory interest of 12% from 7/1/84 to 12/29/88, the date of this Court's first judgment in this adversary proceeding. Subsequent to December 29, 1988, the federal interest rate applies, calculated according to 28 U.S.C. § 1961. *Loft v. Lapidus*, 936 F.2d 633 (1st Cir.1991) ("section 1961 relates only to *post-judgment* interest, specifically providing that '[s]uch interest shall be calculated from the date of the entry of judgment....' State law governs the pre-judgment interest rate.") 936 F.2d at 639 (other citations omitted).

28 U.S.C. § 1961 provides, in relevant part, that

(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

▆ For the period December 15, 1988 through January 12, 1989, the Treasury bill

the facts of this case, and they do not address the issues raised by the Plaintiffs.

rate was 9.2%. Since our original judgment entered on December 29, 1988, the applicable post-judgment interest rate was 9.2%, and should be the figure used to determine interest from December 30, 1988, until the judgment is paid.[3]

Accordingly, the compensatory judgment interest calculation is as follows:

(1) pre-judgment interest on $59,395 from 7/1/84 to 12/29/88 at 12% amounts to $39,656; and

(2) post-judgment interest on $99,051 from 12/30/88 through 9/20/95, at 9.2% is $65,033, for a total compensatory damage award of $164,084. See Exhibit A.

## II. *The Punitive Damage Award*

■ In our August 1994 decision on remand, we reviewed at length the intentional and malicious aspects of the conduct of Lee (and NAF), and determined that an award of punitive damages was required to punish and to deter these (and other) Defendants from engaging in similar fraudulent conduct. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Plaintiffs agree with our finding of liability, but argue that the amount of punitive damages assessed ($150,000) has no deterrent effect, because in the circumstances of this case, Lee will end up with a financial profit as a direct result of his fraudulent conduct.

To avoid such an aberration, Plaintiffs argue, the $423,500 note and mortgage held by Lee and NAF must be declared void in its entirety. While this argument has an equitably appealing ring to it, Chief Judge Lagueux, in his May 4, 1993 remand decision, instructed this Court that punitive damages "should not be calculated specifically to pre-

vent the Reposas from losing their homes." *North Atlantic Fishing,* 153 B.R. at 614.

With Judge Lagueux's admonition in mind, we agree, nevertheless, that reconsideration of the punitive damage award is needed, in light of the arguments presented at the recent hearing, including the Plaintiffs' assertion that we misapplied the law in our August 1994 decision. There, we determined that punitive damages of $150,000 were appropriate, based upon the evidence of the Defendant's financial condition, and the remand instructions of Judge Lagueux. On review, however, we recognize that our prior decision failed to take into account several important factors.

■ To begin with, the interest factor on the damage award was not addressed by either the parties, or the Court. In addition, our estimation of Lee's financial worth was incorrect, in that we failed to consider the value of his ownership, use of, or access to certain assets, and most importantly we failed to take into account the very substantial value of Lee/NAF's secured proof of claim. Finally, our punitive damage assessment was erroneous as a matter of law, due to the manner in which we applied the burden of proof. In this State, the wrongdoer has the burden of showing that, in light of his finances, a punitive damages award is excessive. *See Greater Providence Deposit Corp. v. Jenison,* 485 A.2d 1242, 1245 (R.I.1984). Although our August 1994 decision properly characterized the burden of proof, vis-a-vis punitive damages, Lee was not required to, nor did he offer to establish that a higher award would be excessive, in light of his asset and overall financial condition.

Below, we refer specifically to facts that should have been previously considered in establishing the punitive damage award:

---

3. The fact that on remand the original compensatory damage award was increased to $59,395 does not affect the date on which post-judgment interest commenced. *See Cordero v. De Jesus–Merdez,* 922 F.2d 11 (1st Cir.1990) ("[W]hen an award is modified on remand, interest should accrue on the modified award from the date of the original judgment to the date of payment....

The reduction of the judgment on remand '[did] not prevent interest from attaching upon the reduced amount from the date of the original judgment.' " 922 F.2d at 17–18 (quoting *United States v. Michael Schiavone & Sons, Inc.,* 450 F.2d 875 (1st Cir.1971))); *see also Clifford v. M/V Islander,* 882 F.2d 12 (1st Cir.1989).

(1) The actual value of the compensatory damage award is estimated to be $164,084. *See ante.*

■ (2) In addition to the $32,500[4] received by Lee from the sale of the Pennsylvania property, additional evidence was introduced, but not adequately considered, that: Lee drove a (leased) Mercedes automobile; his children were attending expensive private school and colleges; his wife contributed to the family living expenses; and that when Lee needed money, his wife and mother made it available. We now conclude that, as a matter of law, it was Lee's burden to show that this access to additional assets should not be considered by the Court in determining punitive damages, and that he has failed to do so at every turn.[5]

■ (3) Most importantly, however, our August 1994 decision did not factor in the value of the collateral securing the Lee/NAF proof of claim. At the May 4, 1995 hearing, the parties stipulated as follows: (a) Arthur Reposa's residence is valued at $83,000, has a $7,000 outstanding tax obligation, with $76,-000 of value remaining as security for the Lee/NAF promissory note; and (b) the value of Peter Reposa's house was agreed upon as $220,000, with $80,000 in encumbrances, leaving $140,000 of security for the Lee/NAF note. Collectively, this security is an asset worth at least $216,000. In addition, the Chapter 7 Trustee is holding $77,578 from the sale of the vessel, resulting in a grand total of $293,578 as security for Lee/NAF's

$423,500 proof of claim. Because it is undersecured, the claim accrues no interest.[6] *See* 11 U.S.C. § 506(b); *In re Kalian,* 169 B.R. 503, 505 (Bankr.D.R.I.1994).

■ Thus, the value of the Lee/NAF claim starts at approximately $293,000, and increases, pro rata, to the extent any distribution is made to general unsecured creditors. The $129,922 difference between Lee's $423,500 claim and his $293,578 security (the so-called anticipated deficiency), falls into the general unsecured creditor class and will share in any distribution to that class.

(4) Lastly, we must reconsider this financial information in conjunction with Lee's failure to meet his burden to show that *any* award of punitive damages would be excessive, in the circumstances.[7]

■ Based upon the information now available to us, plus the fact that Lee has enjoyed the financial and other advantages of retaining and using his personal wealth, and other assets during the eight years this matter has been pending, we conclude that an increase in the punitive damage award is required.

In light of the revised figures discussed above concerning the value of these various assets and liabilities, and with the applicable burdens of proof now more correctly in focus, we conclude that the punitive damage award should be set at $250,000. With the guidance of the District Court, the present record, and the arguments, we think that this amount, taken together with the compensatory award of $164,084, will produce the required com-

---

4. The sale produced $65,000 cash for Lee and his wife, or $32,500 each. Our August 1994 decision contained a mathematical error, listing Lee's interest as $23,500.

5. Not once, in any written submission or oral argument before this Court, has Lee contended that he is financially unable to respond to a punitive damage award in *any* of the amounts variously sought or awarded. At most, Lee argues that his assets were diminishing and his net worth had declined in 1987, compared to prior years. We have no information from Lee as to his present net worth, and he has never offered to tell us what it is, or to rebut the Plaintiffs' evidence.

6. To the extent our August 29, 1994 decision held that this claim was accruing interest, we reverse ourselves.

7. Our August 1994 decision pointed out that, outside of the record in this case showing that Lee and NAF hold a secured claim listed at $423,000, very little was presented at trial by Lee regarding his financial status, *see* August 29, 1994 decision, at 13–14, and no amount was suggested by Lee as being excessive, in light of the evidence that was proffered by the Plaintiffs in the way of assets. Instead, Lee concentrated exclusively on arguing that *no* punitive damages should be imposed because of his lack of malice. That argument has been repeatedly rejected.

pensation, punishment, and deterrence, *as well as* preventing this wrongdoer from profiting financially by his fraud.

### III. *Correlation between Compensatory and Punitive Damage Awards, and Lee's Proof of Claim*

■ 11 U.S.C. § 553 contains the relevant setoff provisions in bankruptcy:

> (a) [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. 11 U.S.C. § 553(a)(1995).

But in *Darr v. Muratore,* 8 F.3d 854 (1st Cir.1993), the First Circuit Court of Appeals, in discussing the law of setoff in this jurisdiction, held that:

> [A]llowing setoff undermines a basic premise of bankruptcy law, equality among creditors, by "permit[ting] a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor ... in effect, the creditor receives a 'preference'." ... As a result, setoff in the context of a bankruptcy is not automatic. Under section 553, debts cannot be setoff unless they are mutual.... Where the liability of the party seeking the setoff arises from breach of a fiduciary duty, mutuality of debts does not exist and therefore no setoff is available.

8 F.3d at 860 (citing *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.,* 896 F.2d 54, 57 (3rd Cir.1990)) (other citations omitted).

More recently, the Ninth Circuit in *In re Cascade Roads, Inc.,* 34 F.3d 756 (9th Cir. 1994), stated that the section 553 setoff provisions are permissive, not mandatory, and that " '[e]quity may override a creditor's satisfaction of technical statutory requirements [of § 553].' " 34 F.3d at 765 (quoting *Illinois v. Lakeside Community Hospital, Inc. (In re Lakeside Community Hospital, Inc.),* 151 B.R. 887, 894 (N.D.Ill.1993)). In addition,

the Ninth Circuit has quoted with approval the restriction announced in *In re Blanton,* 105 B.R. 321, 337 (Bankr.E.D.Va.1989), that "[a] second class of cases ... denies all right of setoff to a creditor either on grounds of public policy or because the creditor committed an inequitable, illegal or fraudulent act." *In re Cascade Roads,* 34 F.3d at 765.

Our August 1994 ruling that "[t]his amount [the punitive damage award], as well as the award of compensatory damages in the amount of $59,395, should be deducted from Lee and NAF's pending proof of claim." *Reposa* 171 B.R. at 728, was incorrect. Based upon 11 U.S.C. § 553, and in light of Mr. Lee's fraudulent and willful misconduct, we conclude, as a matter of law, that setoff is not available to him in this case. Instead, it is our recommendation that: (1) the Chapter 7 Trustee abandon the collateral securing the Lee/NAF claim, which is of inconsequential value to these estates; (2) that Lee seek payment of his claim through the liquidation of the collateral, and that any deficiency be treated as an unsecured claim; and (3) that Lee pay to the Trustee the full amount of the damages ordered herein ($59,395 principal and $104,689 in interest to date as compensatory, and $250,000 in punitive damages, with all applicable post-judgment interest, for an approximate total, to date, of $414,084). Said funds shall be used to pay administrative expenses, the remaining allowed claims in both cases (including that of Lee/NAF), and any properly claimed exemptions, with the remaining assets, if any, to be refunded to the Debtors.

To facilitate the conclusion of this dispute in accordance with the foregoing rulings, and having in mind the District Court's directions on remand, the Trustee is granted a lien on all proceeds realized by Herb Lee through the liquidation of the collateral pursuant to Recommendation (2) above, plus a lien on any collateral belonging to Lee which is in the possession of the Trustee. 11 U.S.C. § 105.

Enter Judgment consistent with this opinion.

*EXHIBIT A*

Reposa Interest Calculation Compounded Annually

Pre–Judgment Interest Calculation on $59,395

| Date | BOY Bal | Int. Rate | Yrly. Int. | EOY Bal |
|------|---------|-----------|------------|---------|
| 01–Jul–84 | $59,395 | 12.00% | $ 7,127 | $66,522 |
| 01–Jul–85 | $66,522 | 12.00% | $ 7,983 | $74,505 |
| 01–Jul–86 | $74,505 | 12.00% | $ 8,941 | $83,446 |
| 01–Jul–87 | $83,446 | 12.00% | $10,013 | $93,459 |
| Pro-rated per diem 7-1-88 to 12-29-88: | | | $ 5,592 | $99,051 |

Total Pre–Judgment Interest = $39,656
+ $59,395  (Principal)
$99,051  Total pre-judgment award with interest

Post–Judgment Interest Calculation on $99,051